[No. D009800. Fourth Dist., Div. One. Mar. 28, 1990.]

BOLITHA JAMES LAWS III et al., Plaintiffs and Appellants, v. COUNTY OF SAN DIEGO et al., Defendants and Respondents.

## COUNSEL

Gattey & Messersmith, James M. Gattey and Jennifer T. Messersmith for Plaintiffs and Appellants.

Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace, Chief Deputy County Counsel, and Morris G. Hill, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**HUFFMAN, J.**—Bolitha James Laws III and four other employees of the San Diego County Sheriff's Department appeal the trial court's denial of their petition for writ of mandate and its unfavorable ruling on their request for declaratory relief that the County of San Diego (the County) has a duty to provide them independent counsel on the *Cumis*[1] model established in insurance litigation. Laws and his fellow petitioners (Laws), as well as their employer the County, were sued by various civil plaintiffs for both compensatory and punitive damages on theories of police misconduct. Laws contends a conflict of interest exists between the County and himself, based on their codefendant status, such that common representation by the office of

---

[1] *San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913] (hereafter *Cumis*).

county counsel is violative of ethical rules governing the conduct of attorneys and is in contravention of the principles announced by this court in *Cumis.* In addition he contends the trial court erred in refusing his request for a statement of decision under Code of Civil Procedure section 632.

 We have examined Laws's claims in light of the extensive statutory scheme governing the indemnification and defense of public employees (Gov. Code, §§ 825 et seq., 995 et seq.)[2] and in light of the *Cumis* analysis, and have concluded the statutory scheme adequately protects the rights of public employees to a defense and indemnification in such cases so that there is no room and no need for a judicially declared right to independent counsel of the *Cumis* variety. So broad an extension of existing law would be a matter for the Legislature, not this court. Accordingly, we affirm the judgment and order of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

Each petitioner was sued along with his employer, the County, for alleged police misconduct in actions based on federal civil rights law. (42 U.S.C. §§ 1981, 1983.) Each officer requested the County provide him with a legal defense under section 995.[3] County counsel's office responded with its standard form letter on the subject (a 1982 version of which is attached as an exhibit to the petition for writ of mandate and declaratory relief) stating the County would represent and defend the officer as required by section 995, with the proviso: "[P]ursuant to statute, representation and defense may be withheld or withdrawn if it appears, based upon further investigation, that the act or omission which forms the basis of the complaint was not committed within the scope of your employment with the County, that you acted because of actual fraud, corruption or actual malice or that the defense of you by this office would create a conflict between your interests and those of the County."

With regard to indemnification of damages, the 1982 letter stated the County would pay any judgment for general damages, assuming reasonable and good faith cooperation with the defense and that the alleged act or omission occurred within the course and scope of employment with the County. On the subject of punitive damages (Civ. Code, § 3294), the letter

---

[2] All statutory references are to the Government Code unless otherwise specified.

[3] Section 995 provides in pertinent part: "Except as otherwise provided in Sections 995.2 and 995.4, upon request of an employee or former employee, a public entity shall provide for the defense of any civil action or proceeding brought against him, in his official or individual capacity or both, on account of an act or omission in the scope of his employment as an employee of the public entity."

stated: "While our representation and defense of you will include the defense of the claims for both general and punitive damages, we must advise you that the County cannot pay any judgment against you for punitive or exemplary damages (Gov. Code §§ 818, 825.) [¶] In view of your potential personal liability for punitive or exemplary damages, you may wish to retain your own counsel in this matter. However, as previously noted, this office will defend you in this matter, including the defense of the claim for punitive or exemplary damages and will continue to do so until otherwise advised by you. In the event you do wish to pursue your own defense, this office will be pleased to cooperate fully with your own counsel."[4]

Laws retained independent counsel (James M. Gattey and his firm) who advised the County the 1982 letter created a reservation of rights on the matters of defense and indemnification for general and punitive damages, and thus a conflict of interest between the County and the officers had arisen. The independent counsel advised the County his clients would not waive the alleged conflict, unilaterally associated as cocounsel with county counsel, and demanded a conflict-free defense be provided in one of two ways: The County should rescind its reservations of rights or it should pay for independent counsel for the officers. Independent counsel claimed to represent some 20-40 officers involved in such cases overall. The County refused to carry out either of the two options offered, stating it was acting in compliance with the applicable statutory provisions and no conflict existed.

After a great deal of dispute took place over access to client files and discovery material, as well as disputes about a number of billings by independent counsel to the County for his review of some documents that were initially supplied to him, independent counsel filed this action. The "petition for writ of mandate and declaratory relief" alleges several theories of entitlement to a writ of mandate (abuse of discretion, refusal to exercise discretion, and failure to perform a ministerial duty), as well as seeking declaratory relief in a separate cause of action on the controversy over entitlement to a conflict-free defense. (Code Civ. Proc., §§ 1060, 1085 et seq.)

---

[4]Five years later, in response to "much controversy and misunderstanding" that had arisen, in part from the matters alleged in this petition for writ of mandate and declaratory relief, the office of county counsel issued an updated version of this informational letter to its employees who were defendants in police misconduct suits. The 1987 version of the letter recited it superseded any previous letters, and stated the County would provide the officer with representation, defense, and indemnification as required by sections 825, 825.2, 995, and 995.2, with county counsel to supply the representation as required by sections 995, 995.2, and 996. Indemnification pursuant to section 825 was promised with an explanation that while sections 818 and 825 did not require the County to indemnify the employee for punitive damages, the County was authorized to pay a punitive damages award in appropriate cases as discretionarily determined by the board of supervisors in compliance with the criteria of section 825, subdivision (b).

In a related action, Armstrong v. County of San Diego (Super. Ct. San Diego County, 1987, No. 584359) (*Armstrong*), in which several officers were sued for police misconduct, independent counsel unilaterally associated with the office of county counsel to "act as co-counsel on [the clients'] behalf on the issue of liability for punitive damages." Encountering further difficulty in obtaining access to client files and discovery material, independent counsel filed a motion directed at the County for production of these documents. (Code Civ. Proc., § 2031.) The motion was referred pursuant to Code of Civil Procedure section 639, subdivision (e) to a special master, who generally recommended it be granted with some limitations. Before the special master's report was formally adopted by the court, the County moved for reconsideration of the issue (Code Civ. Proc., § 1008), and that motion was consolidated for hearing along with the trial on Laws's petition for writ of mandate and a companion motion for summary judgment on the request for declaratory relief. (Code Civ. Proc, §§ 1085, 437c.)[5]

The joint hearing began December 19, 1988. The trial court indicated the *Laws* and *Armstrong* matters would be heard separately, but when both counsel began the hearing by referring to authority and argument in each case as pertinent to both sets of issues, the court acceded to independent counsel's suggestion that the *Armstrong* case be taken into account or judicially noticed in connection with the *Laws* matter. The matters were then argued together.[6]

Independent counsel first explained the current status of the underlying civil rights actions: the *Laws* case was set for trial "sometime next year," while the other petitioners' cases had all been disposed of by dismissals or judgment after arbitration. He then presented argument about the scope of alleged conflicts of interest between the County and his clients. County counsel's representative responded that as a practical matter, it would be difficult for one attorney to represent a defendant for some types of damages while another confined his or her representation to another type, and point-

---

[5] Since the request for declaratory relief was contained in a separate cause of action in the petition, rather than in an independent action, a motion for summary adjudication of issues would have been a more appropriate vehicle for determination of the legal issues involved. (Code Civ. Proc., § 437c, subd. (f).) However, the parties and trial court dealt with the matter as a motion for summary judgment, and we have had no difficulty in analyzing the issues as framed in that manner.

[6] Because of the extensively intertwined nature of the two related actions at the oral argument proceedings, we find no irregularity in the inclusion in the "joint appendix" of materials from the *Armstrong* case, even though no appeal is pending in that separate matter. With respect to the County's complaint that Laws's attorney (the independent counsel) failed to comply with California Rules of Court, rule 5.1, by seeking the cooperation of opposing counsel in the preparation and designation of the record, we note merely that this court previously denied the County's motion to dismiss this appeal on these same grounds. We decline to again address the matter.

ed out that an attorney at a jury trial cannot realistically encourage the jury to make an award of punitive damages while discouraging any award of compensatory damages. He stated: "There's simply no way to defend the case, no way that I could think of, whereby I could argue or control the evidence in such a way that would somehow benefit the County's side at the expense—or whether or not at the expense—just benefit the County without benefiting the individual deputies."

County counsel's representative then pointed out the County had never disputed the petitioners were acting in the course and scope of their employment at the times of the acts or omissions alleged in the various actions, and the court confirmed that was a "non-issue" in the cases before it.

At the hearing, the court was forced to interrupt argument several times to attend to other pending court business, such as a jury trial that was trailing. After noting it did not have certain points and authorities that had been submitted in the *Armstrong* matter and requesting that they be supplied, the court concluded the hearing on December 19, 1988, by asking counsel to return to the courtroom two days later, stating: "I will not entertain further oral argument at that time. I will give you my ruling.

"Court's in recess."

At the continued proceedings, the court denied the petition for writ of mandate, concluding Laws had not made out a conflict of interest between the employees and the County and thus the County had no legal duty to provide Laws with a separate legal defense under the *Cumis* reasoning. The court granted the motion for summary judgment on the request for declaratory relief that the County should recognize the role and exclusive authority of independent counsel, but with the restriction that the County would then have no obligation under sections 825 or 996.4 to indemnify the employees for general damages or to reimburse independent counsel for the costs of defense.

In the *Armstrong* matter, the court granted the reconsideration motion, ruling that county counsel was the only proper attorney before the court representing the officers.[7] Independent counsel then requested the court prepare a statement of decision. The request was denied, with the court noting it had reached its decision that there was no conflict based on the facts as presented by both counsel, and stating, "the Court of Appeal is perfectly able to review those facts to determine whether my ruling is

---

[7] The court also issued an advisory ruling in *Armstrong* that if the deputies elected to utilize independent counsel exclusively instead of the office of county counsel, the motion for production of documents could then be granted.

correct or not." Independent counsel then "stormed out of the courtroom," and the court arranged for a copy of the order after hearing to be sent to him. Laws timely appealed the ruling.[8]

## DISCUSSION

In addition to claiming the trial court erred in refusing him the statement of decision, Laws bases his contention the court erred as a matter of law in determining there was no conflict of interest between the County and its officer-employees on several theories. He first contends the statement in the 1982 letter that the County "cannot" pay any judgment for punitive damages is contrary to the current version (amended in 1985) of section 825, subdivision (b). He next claims the County's 1982 letter to the officers was a reservation of rights which purported to reserve the right to withdraw the defense once supplied, in contravention of section 825, subdivision (a).[9] From these points, he concludes the interests of the County and its officer-employees are necessarily adverse, and that county counsel cannot ethically represent both types of defendants in police misconduct suits.[10] This conflict

---

[8] The record does not disclose any judgment was ever entered on the order after hearing, as required in a writ of mandate proceeding and in a successful motion for summary judgment. (Code Civ. Proc., §§ 1109, 437c, subd. (j), 437c, subd. (*l*).) At the conclusion of the hearing, county counsel's representative correctly noted the court's rulings disposed of the entire *Laws* case, and the court did not disagree. In light of the conclusive nature of the order after hearing, we construe it to be a final and appealable judgment. (See *Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517, 524 [322 P.2d 933] (disapproved on another point in *Taylor* v. *Superior Court* (1979) 24 Cal.3d 890, 900 [157 Cal.Rptr. 693, 598 P.2d 854]); 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 376, at p. 380.)

[9] Section 825, subdivision (a) provides the procedure for a public employee to request a defense against any claim or action arising out of an act or omission occurring within the scope of public employment, and provides for payment of a judgment or settlement after such a defense, subject to any reservation of rights based on the outcome of the issue concerning whether the act or omission was committed in the course and scope of public employment.

Section 825, subdivision (b), added in 1985, in pertinent part authorizes public entities to pay a punitive damage award upon a discretionary determination by the governing body of the entity that certain criteria have been met: (1) the employee was acting within the course and scope of employment, (2) in good faith, without actual malice and in the apparent best interests of the entity, and (3) payment of the claim or judgment would be in the best interests of the entity. It is further provided in the subdivision that the possibility of this indemnification for punitive damages shall not be disclosed at trial; if disclosure occurs, it is grounds for mistrial.

A commentator has observed this 1985 change in the law regarding indemnification for punitive damages arose from a particular case in which a public entity took it upon itself, apparently due to considerations of officer morale, to pay a punitive damages award in a police misconduct suit. A taxpayers' action challenged this decision and the entity's payment of the award was upheld on appeal. The amendment creating section 825 followed. (Note, *Police Misconduct Suits: The Duty to Defend; The Duty to Indemnify; and Whether There Is a Duty to Provide Separate Counsel Under California Government Code Section 825* (1987) 8 Whittier L.Rev. 1041, 1064-1065.)

[10] As authority on the ethical considerations involved, Laws cites the rules discussed in *Cumis* (*supra,* 162 Cal.App.3d 358, 366-375) as well as rule 1.7(b) of the American Bar

is alleged to arise from that agency's primary loyalty to the County, thus creating a relationship similar to the tripartite insurer-insured-insurance defense counsel relationship analyzed in *Cumis*. Laws contends the County has a duty to supply him with independent, county-funded counsel who will have the right to control the conduct of the defense of the officer-employees, under the circumstances alleged (punitive damages claims and conditional defense).

■ Before addressing these substantive arguments, we are first required to comment upon the demonstrated mootness of the claims of those officer-employees whose actions have been fully resolved. Even where the questions presented may be technically moot as to the parties, an appellate court may exercise its discretion to consider issues of continuing public importance. (*Hardie* v. *Eu* (1976) 18 Cal.3d 371, 379 [134 Cal.Rptr. 201, 556 P.2d 301].) This is such a case, of statewide import, and we shall address the merits.

■ We also find it necessary to dispose as a threshhold matter with Laws's claim the court erroneously failed to grant his request for a statement of decision. (Code Civ. Proc., § 632.) Under that section, a request for a statement of decision after a trial that was concluded within one calendar day or in less than eight hours over more than one day must be made before the matter was submitted for decision. It is evident from this record that this trial was completed in less than one day, since the court went on to conduct additional judicial business (the trailing jury trial) after the conclusion of oral argument on December 19, 1988, and since the court clearly stated at the end of the hearing it would not entertain further oral argument at the next session but would then give the parties its ruling. Even though additional points and authorities that were missing were requested to be supplied before the next session, they were from the *Armstrong* case, which dealt with different (although related) issues. This case is thus distinguishable from the authority cited by Laws, *Gordon* v. *Wolfe* (1986) 179 Cal.App.3d 162, 166 [224 Cal.Rptr. 481], in which the trial court expressly told the parties it had to take an extra day to read a certain deposition that was part of the plaintiff's case. The parties had "fair warning" (*ibid.*, citing *Mitchell* v. *County of Orange* (1985) 165 Cal.App.3d 1185 [211 Cal.Rptr. 563]) the matter was submitted for decision at the conclusion of the only contested portion of the hearing, and Laws's later request for the statement of decision was thus untimely.

■ Turning to the merits of the conflict of interest issue, we first point out the difference between the factual context in which this dispute arose, statutorily mandated defense of public employees, and the facts which gave

---

Association Model Rules of Professional Conduct and rule 3-310(B) of the State Bar Rules of Professional Conduct.

rise to *Cumis* (the parties' and their representatives' rights and duties under an insurance contract).[11] ▮▮ In the public employment context, the 1985 amendment to section 825, subdivision (b) has empowered public entities in appropriate cases to make discretionary decisions after any judgment is rendered to pay punitive damages awards; in contrast, it is generally against public policy for liability insurance to be issued or obtained against punitive damages. (See Keeton & Widiss, Insurance Law (1988) § 5.3(g), pp. 494-497.) Thus, a public entity has somewhat more incentive than would an insurance company to carry out a defense of someone other than the entity or insurer itself (e.g., an employee) which is thorough and protective against punitive damages. Another distinguishing feature is that in an insurance defense context, policy limits will obtain, while a public entity's potential liability is theoretically limitless. Such a factor could presumably affect the zealousness of a defense provided in some cases.

▮▮ In addition to the differences outlined above, an extensive statutory scheme has been developed to govern the indemnification and defense of public employees. Section 825 et seq. control the right of public employees to indemnification against damages awards, including, in some cases since 1985, punitive damages. (See fn. 9, *ante.*) Thus, additional powers were granted to public entities regarding the payment of punitive damages some three years after the 1982 letter relied on by Laws to support his arguments was sent. As noted above (see fn. 4, *ante*) that 1982 letter was in any case superseded by a 1987 version sent to the petitioners which notified them of this change in the law in an attempt to clear up confusion and misunderstanding that had arisen.

At the oral argument on Laws's petition, county counsel's representative made the argument that for practical purposes, it is not possible to separate out the defense of compensatory damages claims from punitive damages claims; this point is well taken, even in the pretrial settlement context, in light of the potential exposure to punitives now allowed by section 825, subdivision (b). Thus, Laws's argument a conflict of interest arises due to county counsel's control of the development of the facts in the lawsuit, accordingly controlling the coverage question with respect to punitive damages, is unconvincing. This is particularly so here, where the record shows county counsel stated at the oral argument the cases of the petitioners in

---

[11] First, however, we must note this court has recently emphasized in *United States Fidelity & Guaranty Co.* v. *Superior Court* (1988) 204 Cal.App.3d 1513, 1520-1526 [252 Cal.Rptr. 320], that we adhere to the principles announced in *Cumis* for various convincing reasons, including the denial of hearing on *Cumis* by the Supreme Court, the Legislature's apparent endorsement of the *Cumis* conflict premise by its enactment of Civil Code section 2860, and the development of subsequent case law. Our task here is not to reassess the validity of the *Cumis* approach, but to decide if it should be extended to these facts.

*Laws* never involved any disputes over whether the employees had acted within the course and scope of their employment; the County never claimed they had not.[12] This record, therefore, does not support Laws's contention a live controversy still exists about whether the County "cannot" in any case indemnify its employees for punitive damages, thus giving rise to a particular conflict of interest.

Even if the record were otherwise, recent statutory and case law has established that the mere existence of a punitive damages claim does not necessarily create a conflict of interest requiring the appointment of independent counsel for the analogous party to the employees here, an insured. (Civ. Code, § 2860, subd. (b) (enacted in 1987); *Foremost Ins. Co. v. Wilks* (1988) 206 Cal.App.3d 251, 261-262 [253 Cal.Rptr. 596].) Civil Code section 2860, subdivision (b) also provides a conflict may exist where an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by the primary insurance defense counsel. However, as explained above, the practicalities of this type of litigation do not support Laws's claim the officers may be "hung out to dry" on punitive damages, while compensatory damages are vigorously defended against, where there is, as here, no course and scope of employment issue.

Where an identifiable issue does exist as to whether the officer was acting within the course and scope of his or her employment at the time of the acts complained of, existing law provides an adequate framework for the protection of the officer's interests. Section 995.2,[13] "Grounds for refusal to

---

[12] This fact renders the federal authority cited by Laws in his "supplemental points and authorities," *Dunton v. County of Suffolk* (2d Cir. 1984) 729 F.2d 903, distinguishable. In that case, the public entity's attorney who was defending both the entity and the public employee expressly told the jury the employee had not been acting under color of state law at the time of the acts complained of by the civil rights plaintiff, but was acting as an "irate husband." (*Id.* at pp. 906-907.) This proved to be a good defense for the entity, which obtained dismissal from the action, while the employee was held liable for damages in his individual capacity. The Court of Appeals found fault with such dual representation. Such egregious facts are simply not present here.

[13] Section 995.2 provides as follows: "(a) A public entity may refuse to provide for the defense of a civil action or proceeding brought against an employee or former employee if the public entity determines any of the following: (1) The act or omission was not within the scope of his or her employment. [¶] (2) He or she acted or failed to act because of actual fraud, corruption, or actual malice. [¶] (3) The defense of the action or proceeding by the public entity would create a specific conflict of interest between the public entity and the employee or former employee. For the purposes of this section, 'specific conflict of interest' means a conflict of interest or an adverse or pecuniary interest, as specified by statute or by a rule or regulation of the public entity. [¶] (b) If an employee or former employee requests in writing that the public entity, through its designated legal counsel, provide for a defense, the public entity shall, within 20 days, inform the employee or former employee whether it will or will not provide a defense, and the reason for the refusal to provide a defense. [¶] (c) If an actual and specific conflict of interest becomes apparent subsequent to the 20-day period following the employee's written request for defense, nothing herein shall prevent the public

provide a defense; request of defense; refusal because of conflict of interest," supplies criteria for the determination by the public entity of circumstances giving rise to a conflict of interest justifying a refusal to provide a defense to an employee or former employee. It also provides for the entity to notify the employee if the defense has been accepted, and for a refusal to provide a further defense "[i]f an actual and specific conflict of interest becomes apparent" following the initial notification period. Section 996 provides three options for the entity's furnishing of a defense: its own attorney, outside counsel, or insurance defense counsel. (Also see section 996.4, regarding reimbursement of an employee for his or her own defense costs upon the entity's refusal to provide a defense on request.) All of these sections create a comprehensive scheme which covers the field so that application of *Cumis* principles here would be superfluous. For all these reasons, we are not impressed by Laws's arguments for independent counsel based on exposure for punitive damages.

On Laws's alternate theory in support of his claim of right to publicly paid independent counsel (the County's alleged reservation of rights in the 1982 letter to withdraw the defense once provided), we note initially that the 1987 letter (superseding all earlier letters) does not contain the conditional defense language of which Laws complains. In any case, the point is moot because the record does not show any such withdrawal of defense was ever made or threatened here. As noted above, section 995.2 provides for a refusal to initially provide or later continue a defense upon the entity's finding of certain types of conflicts of interest. (See fn. 13, *ante.*) This specific statute prevails over the more general language of section 825, subdivision (a) relied upon by Laws. (See fn. 9, *ante,* and *Palmer* v. *Agee* (1978) 87 Cal.App.3d 377, 383 [150 Cal.Rptr. 841].)

Moreover, since the County's current policy, as reflected in its 1987 letter, refers to the County's obligation to provide representation and defense "as required by Government Codes sections 995, 995.2, and 996," it appears the County is in full compliance with applicable law with regard to the matters alleged in Laws's petition. Accordingly, a writ of mandate to require the County and its officials " 'to exercise . . . discretion and to exercise it under a proper interpretation of the applicable law' " (*Shepherd* v. *Superior Court* (1976) 17 Cal.3d 107, 118 [130 Cal.Rptr. 257, 550 P.2d 161]) will not lie. Similarly, the ruling on Laws's request for summary judgment on declarative relief was correct.

There may be compelling policy reasons to expand the availability of independent counsel in police misconduct suits (see note, *Police Misconduct*

---

entity from refusing to provide further defense to the employee. The public entity shall inform the employee of the reason for the refusal to provide further defense."

*Suits, op. cit. supra,* at pp. 1053, 1060-1062, 1068; also see Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 5.86, pp. 587-589). We believe, however, that changes in the manner in which defenses in civil actions are provided for public employees have the potential for enormous fiscal impact on state and local governments. The relationships of public employee groups and their respective employers are also matters of considerable importance to the functioning of government in this state. These are not problems well suited to ad hoc judicial solution. We therefore decline to attempt modification of the existing legislative scheme. Our analysis of existing law convinces us Laws's claims are unfounded.

## DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Benke, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 21, 1990.