[No. F015685. Fifth Dist. Oct. 30, 1992.]

MARY RIVAS, as Special Administrator, etc., et al., Cross-complainants and Appellants, v.
CITY OF KERMAN et al., Cross-defendants and Respondents.

## COUNSEL

Baker, Manock & Jensen, John H. Baker, James C. Schaeffer, Bertram T. Kaufmann and Raymond L. Carlson for Cross-complainants and Appellants.

Mayer & Reeves and Irving Berger for Cross-defendants and Respondents.

## OPINION

**BUCKLEY, J.**—In this opinion, we hold that Government Code[1] section 825 does not compel a public entity to pay a judgment entered against its employee unless the public entity provided the employee's defense. Section 825.2 ensures protection of public employees by providing for indemnity by public entities for employees' actions committed in the course and scope of employment.

### THE CASE

On April 20, 1987, Fernando Herrera, Ricardo Herrera (collectively Herrera) and Juanita Amavizca filed suit against Orlando Velasquez, the City of Kerman (City) and Kenneth Stafford, Chief of Police for the City of Kerman. The complaint alleged, inter alia, that Velasquez, within the scope of his employment as a police officer for the City and without justification, shot Fernando in the presence of his brother Ricardo and Juanita Amavizca.[2]

Velasquez requested the City to defend him in the action. The City denied his request for defense because, in relevant part, the shooting "was not within the scope of [his] employment" and because he acted with "actual fraud[,] corruption or actual malice."

---

[1] All statutory references are to the Government Code unless otherwise indicated.

[2] Shortly after the shooting, Velasquez resigned his position as police officer.

Velasquez filed a cross-complaint for declaratory relief against the City for a determination of respective liabilities and a declaration of the City's alleged responsibility to defend and indemnify Velasquez.

Thereafter, Herrera entered into a written agreement with Velasquez entitled "ASSIGNMENT OF RIGHTS" whereby Velasquez agreed to entry of judgment against himself and in favor of Herrera in the sum of $5,825,000 and assigned all claims he had against the City to them. In a separate written agreement entitled "COVENANT NOT TO EXECUTE AND INDEMNITY AGREEMENT," Herrera agreed not to execute the stipulated judgment against Velasquez and to dismiss the complaint to determine nondischargeability of debt Herrera had previously filed in connection with Velasquez's then-pending bankruptcy proceedings. Velasquez and plaintiffs below filed a stipulation for entry of judgment and order providing that judgment was to be entered in favor of Fernando in the sum of $5.8 million and in favor of Ricardo in the sum of $25,000 against Velasquez. Judgment was entered by the court in conformity with the terms of the stipulation (stipulated judgment).

On April 17, 1989, Herrera and Velasquez joined together and filed a first amended cross-complaint against the City and Stafford for declaratory relief. The City's demurrer to this cross-complaint was sustained as was its demurrer to their second amended cross-complaint.

On December 29, 1989, the third amended cross-complaint at issue herein was filed by the same parties; the first cause of action alleges that section 825 requires the City to pay the stipulated judgment on Velasquez's behalf. Paragraph 9 of this cross-complaint alleged as follows:

"9. The judgment entered in the Underlying Action has the same effect as if the Underlying Action had been tried on the merits (see, e.g., *Avery* v. *Avery* (1970) 10 Cal.App.3d 525, 529 [89 Cal.Rptr. 195]), and accordingly the judgment is one which Cross-Defendant City of Kerman is required to pay under Government Code § 825, which mandates that 'the public entity shall pay any judgment based [on a claim for injury arising out of an act or omission occurring within the scope of the public employee's employment with the public entity].' The judgment is not a compromise or settlement to which the public entity must agree for purposes of Government Code § 825. Furthermore, if Defendant City of Kerman had a right under § 825 to have prior notification of the judgment entered against its' [*sic*] employee, Orlando Velasquez, said Defendant waived any such right after having been notified of the underlying action and unqualifiably refusing to defend or otherwise provide coverage to Orlando Velasquez in the action despite his

request therefore [*sic*] as described above (See eg., *Samson* v. *TransAmerica Ins. Co.* (1981) 30 Cal.3d 220, 240-241 [178 Cal.Rptr. 343, 636 P.2d 32].)"

The City demurred on the basis that the first cause of action failed to state a claim, arguing that section 825 does not apply because the City did not conduct the defense of Velasquez and because the stipulated judgment is not a judgment within the meaning of the section. The trial court sustained the demurrer to the first cause of action on the ground that the "alleged 'Stipulation for Entry of Judgment and Order' is not a 'judgment' within the meaning of Government Code Section 825."

A fourth amended cross-complaint was not filed and the third amended cross-complaint was dismissed.

Mary Rivas, as special administrator for the estate of Fernando Herrera, and Ricardo Herrera appeal.[3]

DISCUSSION

Appellants contend the trial court erred in sustaining the demurrer to the first cause of action of the third amended cross-complaint by determining that the term "judgment" contained in section 825[4] does not include a

---

[3]It is alleged in a separate first amended complaint not at issue herein that Fernando died on May 11, 1990, and Mary Rivas was appointed special administrator of his estate. While Velasquez joined with Herrera in filing the third amended cross-complaint against his former employer, he is not a party to this appeal.

[4]Section 825, subdivision (a) provides:

"(a) If an employee or former employee of a public entity requests the public entity to defend him against any claim or action against him for an injury arising out of an act or omission occurring within the scope of his employment as an employee of the public entity and such request is made in writing not less than 10 days before the day of trial, and the employee or former employee reasonably cooperates in good faith in the defense of the claim or action, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed.

"If the public entity conducts the defense of an employee or former employee against any claim or action with his reasonable good-faith cooperation, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed; but, where the public entity conducted such defense pursuant to an agreement with the employee or former employee reserving the rights of the public entity not to pay the judgment, compromise or settlement until it is established that the injury arose out of an act or omission occurring within the scope of his employment as an employee of the public entity, the public entity is required to pay the judgment, compromise or settlement only if it is established that the injury arose out of an act or omission occurring in the scope of his employment as an employee of the public entity.

"Nothing in this section authorizes a public entity to pay that part of a claim or judgment that is for punitive or exemplary damages."

stipulated judgment.[5] ▮▮▮ However, the issue which this court must determine is not whether the term "judgment" includes a stipulated judgment but whether section 825 is even applicable when the public entity has declined to provide a defense for the employee or former employee. As will be explained, review of the language of section 825, subdivision (a), the surrounding statutory framework, persuasive legal authority and public policy considerations all support the conclusion that section 825, subdivision (a) applies only in those situations in which the public entity provides a defense for the employee. Because the City declined to defend Velasquez pursuant to section 995.2,[6] section 825, subdivision (a) is not controlling and the trial court did not err in sustaining the demurrer to the first cause of action.[7]

I. *The language of section 825 itself demonstrates that it is applicable only when the public entity has provided a defense.*

▮▮▮ Statutes must be interpreted in accord with the plain meaning of the language used and their words are to be given their ordinary, commonsense meaning unless doing so would frustrate the "manifest purposes of the legislation as a whole or [lead] to absurd results." (*People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].) A statute must be considered as a whole, with all parts read together and harmonized as much as possible. (*Jones* v. *Tracy School Dist.* (1980) 27 Cal.3d 99, 114 [165 Cal.Rptr. 100, 611 P.2d 441].)

▮▮▮ The language of section 825 clearly indicates the section is applicable only if the public entity provides a defense for the employee. Paragraph one of subdivision (a) explicitly provides that the following conditions must be met in order for the employee or former employee to be entitled to indemnity: (1) the employee must request a defense and (2) this request must be made not less than 10 days before the date of trial and (3) the employee must cooperate in good faith in the defense. It is clear by the use of the word "cooperate" that the public entity must agree to provide the defense. If the statute intended to provide that indemnity is available regardless of whether the public entity acceded to the employee's request for defense, logically some indication of this intention would be present in the language of the statute. For example, the Legislature could have added the phrase "regardless of whether the defense is conducted by the public entity" after the requirement that the employee cooperate in good faith, in order to clarify

---

[5]Appellants did not challenge the sustaining of the demurrers to the second, fourth and fifth causes of action.

[6]Section 995.2 is quoted and discussed, *post*, at section III.

[7]If a ruling is correct on any legal theory, it will not be disturbed on appeal. (*Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

that the defense does not refer exclusively to one provided by the public entity. Neither this phrase nor anything similar is contained in the statute. Thus, we find it implicit in paragraph one that "the defense" in which the employee must cooperate is one which the public entity provided after his or her timely request and not one which the employee provided on his own after refusal by the public entity.

That the phrase "the defense" in paragraph one refers to a defense provided by the public entity is further supported by the language used in section 825.2 in which, inter alia, it is specifically stated the employee must "conduct the defense of the claim or action in good faith or to reasonably cooperate in good faith in the defense *conducted by the public entity* [italics added]" in order to be entitled to recover any sums he or she has expended to satisfy a judgment arising out of his or her employment with a public entity. "Under well-established principles of statutory construction, these interrelated provisions must be construed together and harmonized if possible. [Citation.] . . . [W]hen the same word or phrase is used, it should be given the same meaning in the related part of the law." (*Gruschka* v. *Unemployment Ins. Appeals Bd.* (1985) 169 Cal.App.3d 789, 792 [215 Cal.Rptr. 484].) Section 825 and section 825.2 are part of one comprehensive statutory framework and are inextricably interwoven; therefore, the phrase "the defense" should be construed in section 825 to have the same meaning as that explicitly given it by the Legislature in section 825.2.[8]

Moreover, the introductory phrase of paragraph two of subdivision (a) of section 825 reads as a restatement of paragraph one and it *explicitly* provides that the public entity must provide the defense in order for the section to be applicable. The introductory clause reads: "If the public entity conducts the defense of an employee or former employee against any claim or action with his reasonable good-faith cooperation, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed; . . ." Appellants' argument that paragraph two refers only to the situation in which the public entity provides the defense under a reservation of rights fails; such an interpretation renders the introductory clause of the paragraph quoted above meaningless as the remainder of paragraph two concerns the situation in which defense is provided under a reservation of rights. Thus, the introductory clause would be mere surplusage if it too were interpreted to apply only to situations in which the employee was defended under a reservation of rights. ■ Such an interpretation must be rejected; construction of a statute which renders a

---

[8]Section 825.2 and its relation to section 825 is discussed in greater detail, *post*, at section II.

word or phrase mere surplusage is to be avoided and "every word should be given some significance, leaving no part useless or devoid of meaning." (*City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935].) ■■ Therefore, construing the language of section 825 to give meaning to every word and phrase and in harmony with related statutes mandates the conclusion that the statute is directly applicable only when the public entity provides the employee's defense.

II. *The statutory framework of article 4 as a whole demonstrates that section 825 is applicable only when the public entity provided the defense.*

■■ Various parts of statutory enactments must be harmonized by considering the particular section at issue in the context of the statutory framework as a whole. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) ■■ Sections 825 and 825.2 were enacted in 1963 as part of article 4, a package of legislation concerning governmental liability for torts committed by its employees. Section 825.2[9] is applicable to situations in which a public entity declines to defend an employee and ensures the employee will be held harmless against claims arising out of the scope and course of his employment with the public entity.[10]

Section 825.2, subdivision (a) explicitly provides that recovery under section 825 is "[s]ubject to subdivision (b)" discussed above. Pursuant to section 825.2, subdivision (b), such recovery is possible *only* when the employee proves that the act occurred within the scope of his employment and the public entity fails to establish the employee acted because of fraud, corruption or actual malice or he failed to cooperate in good faith in the

---

[9]Section 825.2 provides in pertinent part:

"(a) Subject to subdivision (b), if an employee or former employee of a public entity pays any claim or judgment against him, or any portion thereof, that the public entity is required to pay under Section 825, he is entitled to recover the amount of such payment from the public entity.

"(b) If the public entity did not conduct his defense against the action or claim, or if the public entity conducted such defense pursuant to an agreement with him reserving the rights of the public entity against him, an employee or former employee of a public entity may recover from the public entity under subdivision (a) only if he establishes that the act or omission upon which the claim or judgment is based occurred within the scope of his employment as an employee of the public entity and the public entity fails to establish that he acted or failed to act because of actual fraud, corruption or actual malice or that he willfully failed or refused to conduct the defense of the claim or action in good faith or to reasonably cooperate in good faith in the defense conducted by the public entity."

[10]Appellants do not argue section 825.2 is applicable and, therefore, leave to amend should have been granted. We presume that appellants would be unable to establish that Valesquez was acting within the course and scope of his employment at the time of the shooting.

defense conducted by the public entity. Section 825.2 anticipates the situation in which the public entity did not conduct the defense of the employee by expressly providing that in such situations, the employee is entitled to recovery if he complies with the requirements of subdivision (b). Pursuant to subdivision (b), the employee will be held harmless by the public entity employer if he proves he was acting within the scope and course of his employ and the public entity does not prove the employee acted because of actual fraud or malice or that the employee did not defend against the claim in good faith.

To hold that section 825 applies even if the public entity does not defend the employee would permit appellants to compel the City to pay the stipulated judgment without proof that Velasquez acted within the scope and course of his employ or without giving the public entity a chance to demonstrate that he acted with actual malice towards Herrera, thus permitting Velasquez to circumvent the protections for public entities contained in section 825.2, subdivision (b). Such an interpretation would be especially onerous as these are two of the grounds upon which the City refused to defend Velasquez.

The legislative history for section 825 is in accord with this interpretation of sections 825 and 825.2. The report of the Assembly Committee on Judiciary on Assembly Bill No. 1919, prepared in connection with the 1972 amendment to sections 825 and 825.2, which added the requirement of "good faith cooperation in the defense" of the action, contains the following summary explaining when the Legislature intends a public entity to be required to indemnify an employee or former employee:

"In short, the public entity will indemnify the public employee if:

"(1) liability arises out of the scope of his employment as a public employee;

"(2) liability is not the result of the employee's actual fraud, corruption or actual malice; *and*

"(3) the public employee presented a good faith defense against liability or cooperated with the public entity's presentation of the defense." (Assem. Com. on Judiciary Rep. on Assem. Bill No. 1919 (June 12, 1972) p. 1.) Statutes are to be interpreted in accordance with the legislative intent in their enactment. (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288].) Accordingly, section 825 cannot be interpreted to directly apply when the public entity has not conducted the defense as such

an interpretation would force the public entity to pay a judgment when requirements numbers (1) and (2) above have not been met, thus conflicting with the intent of the Legislature in enacting section 825 and related sections.

■ It must be noted that while subdivision (a) of section 825.2 provides that if the public employee pays any claim or judgment entered against him, he is entitled to recovery of this amount if he satisfies the requirements of subdivision (b), the legislative intent in enacting sections 825 and 825.2 discussed above demonstrates that the terms "pays" and "recovery" are not to be interpreted literally. ■ Generally, words in a statute should be given the plain meaning they bear in ordinary use. (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].)

"But the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

■ Accordingly, these terms must be interpreted such that if the public entity declines to defend the employee and judgment is entered against him or her, and the employee subsequently satisfies the requirements of subdivision (b) of section 825.2, the employee will be held harmless by the public entity. Such an interpretation is in accordance with the legislative intent expressed in the report of the Assembly Committee on Judiciary quoted above. Interpreting the terms "pays" and "recovery" broadly ensures that a public entity will indemnify the employee if the three requirements for indemnity outlined in the report are met. To require literal payment would impose a fourth requirement not intended by the Legislature.

A literal interpretation of section 825.2, subdivision (a) would also lead to great injustice for potentially innocent employees, denied a defense by their public entity employer, who nonetheless become liable for a judgment arising out of the course and scope of their employment with the public entity. Such employees would be required to pay the judgment, in many

cases bankrupting themselves, before triggering any duty on the part of the public entity employer to reimburse them for their losses. To the extent the judgment exceeds the employee's assets, the injured plaintiff would also be irreparably injured as he or she would have no ability to collect on the judgment for any amount in excess of the employee's ability to pay. It is apparent that if such an interpretation of section 825.2, subdivision (a) were adopted, the public entity would have great economic incentive to refuse to defend all employees facing claims which could result in potentially large judgments, regardless of whether the claims arose out of the course and scope of the employees' employment with the public entity, as the entity would be spared the cost of such judgments to the extent they exceed their employees' ability to pay.

To our knowledge, no case has specifically discussed the relationship between sections 825 and 825.2. However, in *Laws* v. *County of San Diego* (1990) 219 Cal.App.3d 189 [267 Cal.Rptr. 921], the Fourth District Court of Appeal wrote:

"Section 825, subdivision (a) provides the procedure for a public employee to request a defense against any claim or action arising out of an act or omission occurring within the scope of public employment, and provides for payment of a judgment or settlement *after such a defense*, subject to any reservation of rights based on the outcome of the issue concerning whether the act or omission was committed in the course and scope of public employment." (*Id.* at p. 196, fn. 9, italics added.) While the above quoted language is mere dicta and the reasoning upon which the court based this conclusion is not included in the opinion, *Laws* supports the limited applicability of section 825 to cases in which the public entity provides a defense for the employee.

Appellants point to contrary authority in support of the contention that section 825 is applicable regardless of whether the City provided the defense, citing Witkin's Summary of California Law. Discussing the applicability of section 825, Witkin states:

"If the employee or former employee makes a written request for defense not less than 10 days before trial, and reasonably cooperates in good faith in the defense, the entity must pay any judgment or any compromise of the claim or action to which it has agreed, whether or not it conducts the defense, unless it reserves its rights." (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 266, p. 346.) As the sole support for the assertion quoted above, Witkin relies upon a treatise by Arvo Van Alstyne entitled California Government Tort Liability Practice (Cont.Ed.Bar 1980). Appellants also

quote selected portions of this treatise. However, we do not consider California Government Tort Liability Practice to be reliable authority on the subject since its comments regarding the effect of section 825 are contradictory. In section 5.89, at page 593, Van Alstyne specifically states that section 825 imposes upon public entities a duty to indemnify their employees if the following conditions are met:

"(a) the employee or former employee made a written request not less than ten days before trial for the entity to defend him in the action, (b) *the entity conducted the employee's defense,* and (c) the employee reasonably cooperated in good faith in the defense of the action." (Van Alstyne, Cal. Government Tort Liability Practice, *supra,* § 5.89, p. 593, italics added.) However, later in this same section, at pages 595-596, a contradictory conclusion is reached:

"If, after receiving a written request for a defense of its employee ten or more days before the trial, the public entity elects not to furnish the defense (see Govt C §§ 995.2-995.4), it still is required to pay the judgment against the employee, except for exemplary and punitive damages, provided the employee reasonably cooperated in good faith in defense of the action. Govt C § 825. . . . [¶] . . . The act seems to proceed on the theory that so far as satisfaction of the judgment is concerned, the entity waived any contention regarding scope of employment when it elected not to furnish the defense. Electing to provide a defense under a reservation of rights would have preserved that issue. See Govt C § 825." No reasoning or legal analysis is provided for either of the treatise's contradictory assertions regarding the effect of section 825. As respondent correctly notes: "Any secondary authority is persuasive only to the extent it is founded solidly on either authority or reason"; thus, this treatise is entitled to little weight. Moreover, neither this work nor Witkin's Summary of California Law addresses *Laws* v. *County of San Diego, supra,* 219 Cal.App.3d 189, or the legislative report discussed above. Therefore, appellants' authority is not persuasive.

III. *Public policy considerations support this interpretation of section 825.*

■ Public policy considerations also support limitation of section 825 to those situations in which the employee was defended by the public entity. The instant case provides a striking example of the danger inherent in a contrary interpretation. If section 825 were interpreted to include situations in which the public entity declined an employee's request for defense, the public entity would have no protection against an employee's stipulated judgment and would be required to pay such a judgment in full even though

the issue of whether the employee acted with fraud or malice or whether he or she was acting within the scope of his or her employment had never been determined. In fact, the public entity could not even contest the amount of damages to which the employee and the victim agreed. Obviously, such an interpretation invites fraud and/or collusion between the employee and the alleged victim.[11] Therefore, if section 825 were interpreted to apply to situations in which the public entity did not defend the employee, public entities would be forced to protect themselves from potentially fraudulent or collusive situations by providing a defense in all cases, presumably under a reservation of rights, regardless of the merits thereof.

Appellants admit that their interpretation of section 825 requires such an outcome, arguing that "Respondent could have protected itself from the requirement to pay the judgment by providing a defense." Were this interpretation adopted, it would result in a de facto repeal of section 995.2.[12] As nothing in section 825 indicates it is intended to result in the limitation or repeal of section 995.2, appellants' reasoning is not persuasive.

Appellants' argument that the public entity could avoid ever being compelled to pay a judgment on behalf of its employee since it could, with impunity, refuse to defend the employee, is without merit. No hardship is placed upon the employee. Section 825.2 protects employees in such a situation by ensuring that they will be held harmless provided they are able to demonstrate they were acting within the course and scope of their employ at the time of the incident in question. Rather, it is appellants' interpretation

---

[11]The record does not establish that Herrera and Velasquez acted fraudulently or collusively in entering into the stipulated judgment and covenant not to execute.

[12]Section 995.2 provides as follows:

"(a) A public entity may refuse to provide for the defense of a civil action or proceeding brought against an employee or former employee if the public entity determines any of the following:

"(1) The act or omission was not within the scope of his or her employment.

"(2) He or she acted or failed to act because of actual fraud, corruption, or actual malice.

"(3) The defense of the action or proceeding by the public entity would create a specific conflict of interest between the public entity and the employee or former employee. For the purposes of this section, 'specific conflict of interest' means a conflict of interest or an adverse or pecuniary interest, as specified by statute or by a rule or regulation of the public entity.

"(b) If an employee or former employee requests in writing that the public entity, through its designated legal counsel, provide for a defense, the public entity shall, within 20 days, inform the employee or former employee whether it will or will not provide a defense, and the reason for the refusal to provide a defense.

"(c) If an actual and specific conflict of interest becomes apparent subsequent to the 20-day period following the employee's written request for defense, nothing herein shall prevent the public entity from refusing to provide further defense to the employee. The public entity shall inform the employee of the reason for the refusal to provide further defense."

that works a hardship as it would require a public entity to provide a defense in every case, regardless of whether the evidence overwhelmingly supports a conclusion the employee acted outside the scope of his employ, fraudulently or with actual malice towards the victim.

Thus, the language of section 825 itself, the surrounding statutory framework, persuasive legal authority and public policy considerations all support the conclusion that section 825 is inapplicable when the public entity declines to provide a defense; instead, the employee must look to section 825.2. Therefore, as appellants did not and indeed cannot allege that Velasquez has paid the stipulated judgment or that the City provided his defense, the trial court did not err in sustaining the demurrer.[13]

DISPOSITION

The judgment is affirmed. Costs are awarded to respondents.

Ardaiz, Acting P. J., and Reid, J.,* concurred.

---

[13]As we conclude section 825 is inapplicable in the instant case, it is not necessary to determine whether the term "judgment" includes a stipulated judgment or to consider respondent's contention that appellants lacked standing to assert a cross-complaint.

*Retired judge of the Stanislaus Superior Court sitting under assignment by the Chairperson of the Judicial Council.