Christine DeGRASSI, Plaintiff–
Appellant,

v.

CITY OF GLENDORA, a Municipal corporation; Arthur Cook; Paul Butler; Sue Bauer; Marshall Mouw; Albert Fishman; Molly A. MacLeod; Gary W. Andrews; Connie Andrews; Betty Andrews Van Vliet, Defendants–Appellees.

Christine DeGrassi, Plaintiff–Appellant,

v.

City of Glendora, a Municipal corporation; Gary W. Andrews; Connie Andrews; Betty Andrews Van Vliet; Ronald A. Morales; Molly A. MacLeod; Arthur Cook; Paul Butler; Sue Bauer; Marshall Mouw; Albert Fishman; Gary And Lowell Andrews, Inc., a corporation, dba Andrews, Inc.; Burke, Williams and Sorensen, Defendants–Appellees.

Nos. 98–55802, 98–56228.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 1999.

Filed March 20, 2000.

Robert L. Kern, Pomona, California, for the plaintiff-appellant.

Richard R. Terzian, LeBoeuf, Lamb, Greene & MacRae, Los Angeles, California, and Scott J. Vida and Daniel P. Barer, Pollak, Vida & Fisher, Los Angeles, California, for the defendants-appellees.

Before: BRUNETTI and TASHIMA, Circuit Judges, and SCHWARZER,[*] Senior District Judge.

SCHWARZER, Senior District Judge:

Christine DeGrassi was a member of the Glendora City Council (the Council). She seeks indemnity for her attorney's fees from the City of Glendora (the City) under the California Tort Claims Act. She also seeks damages from various City officials and private parties for alleged civil rights violations under 42 U.S.C. § 1983. We must decide: 1) whether a city council member sued for statements made in the scope of her duties as a council member is entitled to an unconditional defense from the City under the California Tort Claims Act; and 2) whether the member's free speech rights under the First Amendment are infringed by her exclusion from council meetings called to discuss the member's request for a defense provided by the City.

## FACTS

DeGrassi was elected to the Glendora City Council in 1994. She alleges that from the time of her election until 1997, the defendants-Council members, City officials, the private law firm representing the

City, and plaintiffs in an action brought against her-subjected her to a campaign of harassment and intimidation because they opposed her political views. She claims that defendants barred her from participating in Council business, prevented her from communicating with City staff, and threatened her both physically and with litigation should she disclose the wrongdoing of any City employee. Much of the conduct complained of occurred as a result of DeGrassi's objection at a City Council meeting in 1996 to the granting of landmark status to a building in Glendora whose prior owner, she claimed, was a child molester. The owners of the building, the Andrews family, filed a slander action (the Andrews action) against her based on her comments at the City Council meeting. DeGrassi claims this action, which was eventually dismissed, was filed in retaliation for her political views.

DeGrassi sought to have the City provide her a defense against the Andrews action. On several occasions during October 1996, the City Council held closed sessions to consider DeGrassi's demand. DeGrassi was excluded from these meetings. She contends this conduct was part of a continuing campaign to interfere with her First Amendment rights and to destroy her political reputation and career; this conduct is the subject of DeGrassi's appeal from the district court's dismissal of her § 1983 claims (No. 98–56228). The City offered to provide DeGrassi with a defense subject to a reservation of rights and the condition that it control the litigation and potential settlement.[1] DeGrassi rejected the offer and retained counsel at her own expense. She now seeks reimbursement of her costs; this is the subject of her appeal from the district court's

[*] The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

1. The City offered to provide a defense and to indemnify DeGrassi subject to reserving the right to require her to pay any judgment if it was determined that her actions were not

within the scope of her official duties or that they were the result of fraud, corruption or malice. In addition, the offer required De-Grassi to agree to cooperate in the defense, to permit the City to select the attorney, and to grant the City complete control over whether and on what terms to settle.

grant of summary judgment against her on her indemnity claim (No. 98–55802).

Subject matter jurisdiction exists under 28 U.S.C. §§ 1331 and 1367. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## DISCUSSION

### I. THE INDEMNITY CLAIM

■ DeGrassi contends that the district court erred in holding that the City had complied with its statutory obligation to provide a defense, ruling that there was no genuine fact issue with respect to her claim for indemnification, and denying her an opportunity to conduct discovery. We review the district court's summary judgment ruling *de novo*. *See Balint v. Carson City*, 180 F.3d 1047, 1050 (9th Cir.1999) (en banc). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See id.* We review the district court's ruling not to permit additional discovery pursuant to Federal Rule of Civil Procedure 56(f) for abuse of discretion. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 920 (9th Cir. 1996).

### A. The City's Conditional Offer to Provide a Defense

■ DeGrassi contends that the district court erred in ruling that the City had complied with its obligation to provide her with a defense. She acknowledges that there is no California authority defining the limits of the ability of the City to control her defense but she argues that as a professional she should be entitled to approve or reject any settlement entered on her behalf.[2] DeGrassi cites a footnote in *Robertson v. Chen*, 44 Cal.App.4th 1290,

52 Cal.Rptr.2d 264 (1996), stating that "[a]n exception to the general rule affording insurers the unconditional right to settle most third party claims without the insured's consent are the provisions in professional liability policies which 'often give the insured the right to approve or reject any settlement negotiated by the insurer.'" *Id.* at 1295 n. 3, 52 Cal.Rptr.2d at 267 n. 3 (citation omitted). Her reliance on this language is misplaced. DeGrassi's claim does not arise under the terms of a liability policy. Rather, it is controlled by the California Government Code, which defines the City's indemnity obligation.

Government Code section 995, which creates the obligation to defend a public employee, provides:

> [U]pon request of an employee or former employee, a public entity shall provide for the defense of any civil action or proceeding brought against him, in his official or individual capacity or both, on account of an act or omission in the scope of his employment as an employee of the public entity.

Cal. Gov't Code Ann. § 995 (West 1995 & Supp.2000). This obligation is limited by the public entity's right to refuse to provide a defense if it determines the employee did not act in the scope of employment, acted with actual fraud, corruption, or actual malice, or that defense of the action would create a conflict of interest between the public entity and the employee. *See* Cal. Gov't Code Ann. § 995.2(a) (West 1995 & Supp.2000). The obligation to indemnify a public employee is found in section 825(a), which provides:

> [I]f an employee or former employee of a public entity requests the public entity to defend him or her against any claim or action against him or her for an injury arising out of an act or omission occurring within the scope of his or her employment as an employee of the pub-

<hr>

**2.** Neither party has requested that we certify this issue, not heretofore addressed by the California courts, to the California Supreme Court and we see no need to do so, inasmuch

as we do not regard it as a close one. *Cf. Alaska Airlines, Inc. v. United Airlines, Inc.*, 902 F.2d 1400, 1402 n. 1 (9th Cir.1990).

lic entity and such request is made in writing not less than 10 days before the day of trial, and the employee or former employee reasonably cooperates in good faith in the defense of the claim or action, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action *to which the public entity has agreed.* Cal. Gov't Code Ann. § 825(a) (West 1995 & Supp.2000) (emphasis added). Under this section, given a proper request by the employee and her good faith cooperation in the defense of a claim based on conduct occurring within the scope of employment, the City must indemnify the employee against any judgment or the cost of a settlement to which it has agreed. *See id.* This language leaves no room to argue that the employee must also agree to the settlement.

These provisions were adopted as a part of the California Tort Claims Act (Cal. Gov't Code §§ 810–996) in response to the California Supreme Court's decision in *Muskopf v. Corning Hosp. Dist.,* 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (1961). That decision eliminated the defense of sovereign immunity in tort actions against the State and other public entities. *See id.* at 213–214, 11 Cal.Rptr. at 90, 359 P.2d at 458. In response, the Legislature adopted legislation to limit tort liability of public entities and of public employees. "[A] principal purpose of the [California Tort Claims Act] centered on assuring the zealous execution of official duties by public employees." *Johnson v. State,* 69 Cal.2d 782, 792, 73 Cal.Rptr. 240, 247, 447 P.2d 352, 359 (1968). To that end, the Legislature provided a qualified right to indemnity.

■ The Legislature did not grant public employees the right to control a defense provided by a public entity. The statute by its terms grants the public entity authority to select an attorney by giving it the option to use its own attorney, hire outside counsel, or purchase insurance requiring the insurer to defend the employ-

ee. *See* Cal. Gov't Code Ann. § 996 (West 1995). It lodges control over settlement in the public entity by limiting the obligation to indemnify a public employee against settlements to those "to which the public entity has agreed." § 825(a). The statute also conditions the employee's rights on her "reasonabl[e] cooperat[ion] in good faith in the defense of the claim or action." *Id.* Failure to cooperate in good faith with the City's defense of the claim relieves the public entity of its obligation to indemnify the employee. *See Stewart v. City of Pismo Beach,* 35 Cal.App.4th 1600, 42 Cal. Rptr.2d 382 (1995) (finding police officer, who made statements that incriminated City to plaintiffs in underlying tort liability action, was not entitled to defense because he had willfully failed to cooperate in good faith with the City's defense). Because a public entity providing an employee's defense under section 825(a) assumes the liability for any resulting settlement or judgment, these qualifications do not undermine its strong incentive to provide an effective defense. *See Laws v. County of San Diego,* 219 Cal.App.3d 189, 197–198, 267 Cal.Rptr. 921, 926 (1990) (finding a public entity has more incentive than an insurance company to carry out another's defense because its liability is theoretically limitless).

We conclude that giving a public employee a right to control settlement of an action defended by the public entity is supported neither by the statute's text nor by its purpose.

### B. *The Reservation of Rights and Conflict of Interest*

■ DeGrassi argues that a genuine issue of material fact exists over whether the terms on which the City offered to defend her created a conflict of interest between her and the City. Her argument is that the lawyers who prepared the City's offer to provide her a defense were the same lawyers who would have defended her. She sought discovery to show that other city employees were provided a de-

fense on different terms. Pointing to Government Code section 996.4, she asserts that the Legislature enacted this section to "eliminate ... possible conflict of interest and ... to assure that deserving public employees will be defended at public expense."

But section 996.4 has no application here. That section applies when a public entity fails or refuses to provide a requested defense. *See* Cal. Gov't Code Ann. § 996.4 (West 1995 & Supp.2000). In that situation, an employee who retains her own attorney is entitled to recover reasonable fees, costs and expenses necessarily incurred in the defense of the action. *See id.* Here, the City offered to provide De-Grassi with a defense on terms which, as the foregoing discussion shows, were consistent with the provisions of the Government Code. Because the City neither refused nor failed to provide DeGrassi with a defense, section 996.4 does not apply.

■ Moreover, there is no authority entitling DeGrassi to retain independent counsel on the strength of her unilateral assertion of a conflict of interest involving the City. Section 995.2(a)(3) permits the public entity to refuse to provide a defense if it determines that the defense would create a conflict of interest between the entity and the employee. *See id.* That section does not entitle the employee to independent counsel simply because she asserts the existence of a conflict of interest. In *Laws v. County of San Diego*, the Court of Appeal rejected county employees' claims that a conflict of interest existed between them and the county where the county's defense offer included a reservation of rights clause. *See* 219 Cal.App.3d at 200–201, 267 Cal.Rptr. at 928. The court held that the county had no duty to provide independent counsel, and that the California Tort Claims Act provided adequate protection of the employees' defense and indemnification rights. *See id.*

### C. *Denial of the Rule 56(f) Request*

■ DeGrassi challenges the district court's denial of her request to conduct discovery. However, her argument that a material issue of fact existed as to whether she and the City and its attorneys had a conflict of interest is without merit. As discussed above, her assumption that the existence of a conflict of interest supports her indemnity claim is fallacious; she had no right to retain independent counsel unless the City refused to provide her with a defense. Because DeGrassi was not entitled to an unconditional offer of defense, the district court properly decided the issue as a matter of law. Moreover, the City had discretion to tailor the terms on which it provided a defense to particular employees. *See, e.g.,* Cal. Gov't Code § 996 (public entity offering defense of public employee may use its own attorney, hire outside counsel, or purchase insurance requiring insurer to defend). Because there is no claim that exercise of that discretion violated state or federal law, the proposed discovery directed at whether the city offered different indemnity terms to other employees would not affect the resolution of the legal issue. The district court did not abuse its discretion when it denied DeGrassi's Rule 56(f) request.

Because the City's offer of a defense complied with the statute, DeGrassi's claim for indemnity fails and summary judgment was properly granted.

## II. THE CIVIL RIGHTS CLAIMS

### A. *Dismissal of the First Claim: Civil Conspiracy*

■ DeGrassi's first civil rights claim alleges a conspiracy to deprive her of her right to control her defense, and a breach of the duty of good faith and fair dealing. The district court dismissed the claim for failure to allege a civil wrong because: (1) the City had complied with its statutory obligation to provide a defense; and (2) no independent claim lies for breach of the duty of good faith and fair dealing in the

absence of a breach of contract claim. DeGrassi's opening brief does not address that issue. In her reply, DeGrassi attempts, without supporting authority, to analogize her relationship with the City to that of an insurance company to its insured. Because we affirm the district court's conclusion that the City had complied with its obligation to defend DeGrassi, this claim was properly dismissed.

### B. *Dismissal of the Second Claim: § 1983*

DeGrassi's second claim alleges, pursuant to 42 U.S.C. § 1983, that the defendants violated her free speech rights under the First Amendment. "Under § 1983, any person may bring a claim against a government official who acts under color of state law to deprive that person of constitutional rights." *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999). The district court dismissed this claim because the statute of limitations barred claims for acts occurring prior to September 24, 1996, and the claims for acts falling within the limitations period were not supported by facts showing a deprivation of DeGrassi's civil rights.

We review *de novo* a dismissal of a complaint for failure to state a claim. *See Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989). When reviewing dismissal of a complaint, we accept the allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.1989). Dismissal of a complaint is improper "unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" *Id.* (quoting *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir.1986)).

#### 1. Application of the statute of limitations to the § 1983 claims.

DeGrassi contends that the district court erred when it dismissed those of her § 1983 claims based on acts occurring more than one year before the filing of the action on September 23, 1997, as barred by the one-year statute of limitations. We apply California's personal injury statute of limitations to § 1983 actions. *See Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir.1999) (holding that in California the one-year statute applies to a § 1983 action). Federal law determines when a civil rights cause of action accrues. *See id.*

DeGrassi argues that her § 1983 claims are saved by the "continuing violation doctrine" under which "'a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period.'" *Sosa v. Hiraoka*, 920 F.2d 1451, 1455 (9th Cir.1990) (quoting *Williams v. Owens–Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982)). She maintains that defendants engaged in "continuous improper activities" both before and after September 23, 1996, and that these activities were "part of the chain of events in a continuing campaign of intimidation and harassment."

She alleges that the City Manager, Arthur Cook, threatened her on three occasions in 1994 concerning statements and questions during City Council meetings, telling her to keep quiet and do as she was told. She alleges that another Council member, Sue Bauer, also threatened her in 1994, telling DeGrassi to vote for her. She charges that Cook and other Council members excluded her from participating in assessments of City commission and board member applications in June of 1994, preventing her from obtaining information about appointments; that they adopted a resolution in 1994 that required all City Council members to obtain Cook's approval before making requests of the City Attorney or department heads, but applied the resolution exclusively to her; that in December 1994, they excluded her from a City Council meeting concerning an unrelated pending lawsuit due to an alleged conflict of interest; and that Cook denied

her information about police cadets and threatened to sue her. DeGrassi further alleges that several actions taken by defendants two years later, immediately before and during the Andrews action, also constitute part of this "campaign." On August 27, 1996, the Glendora Chief of Police, Paul Butler, allegedly refused to provide DeGrassi with reports relating to the alleged molestations occurring in the Andrews' building because the record was sealed. All of this conduct antedated the filing of the complaint in this action by more than one year.

On September 24, 1996, DeGrassi received a phone call from a Council member informing her that other Council members, Cook, and Butler knew the Andrews family intended to file suit against her. In October of 1996, defendants excluded DeGrassi from Council meetings in which the Council members allegedly discussed her defense, and refused to disclose to her what took place during these meetings. She claims other Council members and personnel were permitted to attend such meetings in the past. In December of 1997, the City's lawyers directed Council members not to listen to DeGrassi, and to ignore her questions during a Council meeting. Finally, she alleges that the City's offer of a conditional defense was also part of the defendants' campaign of intimidation and harassment.

Plaintiff relies principally on *Sosa v. Hiraoka*, which held that a pattern of racially discriminatory acts that denied Sosa a promotion established a continuing violation. *See* 920 F.2d at 1456. As the court put it: "[A]ll the acts Sosa alleged are plausibly related as acts of discrimination against Sosa because of his identification as a Mexican–American." *Id.* Similarly, in *Gutowsky v. County of Placer*, 108 F.3d 256 (9th Cir.1997), the court found a continuing violation where a female employee alleged that her employer maintained a discriminatory policy and practice in its hiring and promotion of women: "Gutowsky contends that the widespread policy and practices of

discrimination of which she complains continued every day of her employment, including days that fall within the limitation period." *Id.* at 260; *see also Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757 (9th Cir.1980) (finding allegations included sweeping attack on defendant's systems of promotion, compensation, and training that discriminated against women).

■ Because this is not a case involving a discriminatory system, DeGrassi must state facts "sufficient ... [to] support[ ] a determination that the 'alleged discriminatory acts are related closely enough to constitute a continuing violation,'" and that one or more of the acts falls within the limitation period. *See Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1480 (9th Cir.1989) (citation omitted). DeGrassi's allegations do not meet this test. What she claims is that defendants engaged in a "campaign of harassment and intimidation" but her allegation that there is a continuing wrong is conclusory. DeGrassi's allegations may show a long-standing state of animosity and hostility, marked by incidents of personal conflict between her and other City officials, but they do not establish a series of related wrongful acts. Accordingly, the one-year statute bars her claims for conduct prior to September 23, 1996.

**2. The claim for exclusion from the October 1996 Council meetings.**

■ DeGrassi asserts that her exclusion from Council meetings in October 1996 violated her free speech rights under the First Amendment. According to DeGrassi, these were "closed meetings" in which the claims and defenses in the Andrews action were discussed. She claims she was excluded on advice of the City's counsel.

In City of *Madison Joint Sch. Dist. No. 8 v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976), the Court stated: "Plainly, public bodies may confine their

meetings to specified subject matter and may hold nonpublic sessions to transact business." *Id.* at 175 n. 8, 97 S.Ct. 421. In *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), the Court observed that "the State may reserve [a nonpublic] forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speakers's view." *Id.* at 46, 103 S.Ct. 948. In *Kindt v. Santa Monica Rent Control Bd.,* 67 F.3d 266 (9th Cir.1995), we applied the forum analysis to city council and board meetings. We said that "[c]itizens are not entitled to exercise their First Amendment rights whenever and wherever they wish," *id.* at 269, and concluded that such meetings "fit more neatly into the nonpublic forum niche," *id.* at 270. We acknowledged, however, that "limitations on speech at those meetings must be reasonable and viewpoint neutral, but that is all they need to be." *Id.* at 271.

DeGrassi was excluded from the October meetings because of her status as a party, not because of her viewpoint. *See Perry,* 460 U.S. at 49, 103 S.Ct. 948 (denial of access to nonpublic forum based on status is not viewpoint discrimination). Because of the potential conflict between DeGrassi's role as a Council member and her personal interest, it was reasonable for the Council to exclude her from its discussions concerning her request for a defense. *See Pickering v. Board of Educ.,* 391 U.S. 563, 570, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (finding a sufficiently great interest in confidentiality may override a public employee's First Amendment rights). Moreover, her exclusion caused only a minor intrusion on her right to speak; she was not precluded from speaking out in public or directly with other Council members. *See Pell v. Procunier,* 417 U.S. 817, 824, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) (alternative means of communication are a relevant factor in First Amendment analysis). Because exclusion of DeGrassi was both viewpoint neutral and reasonable, defendants did not violate her First Amendment rights as a private citizen.

■■■ DeGrassi also asserts that as a member of the Council she has First Amendment rights independent of those of a citizen. Restrictions on a council member's ability to attend council meetings and address matters of public concern may infringe the member's First Amendment rights. *See Bond v. Floyd,* 385 U.S. 116, 137, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966) (Georgia legislature's disqualification of elected representative on account of statements about the Vietnam war violated representative's right of free expression under First Amendment). As the Court stated in *Bond,* "[t]he manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy." *Id.* at 135–36, 87 S.Ct. 339. But "[t]he central commitment of the First Amendment ... is that 'debate on *public* issues should be uninhibited, robust and wide-open'.... [S]tatements criticizing public policy and the implementation of it must be ... protected." *Id.* at 136, 87 S.Ct. 339 (emphasis added) (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). With respect to public employees generally, while their "speech on matters of public concern merits the highest degree of First Amendment protection ... if the communication is essentially self-interested, with no public import, then it is not of public concern." *Roe v. City and County of San Francisco,* 109 F.3d 578, 584–85 (9th Cir.1997). As the Supreme Court stated in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983):

When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight

by the judiciary in the name of the First Amendment.

*Id.* at 146, 103 S.Ct. 1684; *see also McKinley v. City of Eloy,* 705 F.2d 1110, 1114 (9th Cir.1983) ("Speech by public employees may be characterized as not of 'public concern' when it is clear that such speech deals with individual personnel disputes and grievances and that the information would be of no relevance to the public's evaluation of the performance of governmental agencies.").

▮ While the free speech rights of elected officials may well be entitled to broader protection than those of public employees generally, the underlying rationale remains the same. Legislators are given "the widest latitude to express their views on issues of policy." *Bond,* 385 U.S. at 136, 87 S.Ct. 339. DeGrassi's allegations do not relate to issues of policy or to any matter of political, social or other concern to the community. They concern her grievance with the Council over the terms on which the City would provide her a defense in the Andrews action. Because her exclusion from the closed meetings did not interfere with DeGrassi's ability to speak out in public or to represent her constituents, it did not offend the First Amendment.

### 3. Filing of the Andrews action.

▮ DeGrassi claims that the Andrewses and Council members conspired to file the slander action in retaliation for her opposition to the designation of the Andrewses' building as an historic landmark. Under § 1983, a claim may lie against a private party who "is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions." *Dennis v. Sparks,* 449 U.S. 24, 27–28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). However, a bare allegation of such joint action will not overcome a motion to dismiss; the plaintiff must allege "facts tending to show that

[the Andrewses] acted 'under color of state law or authority.'" *Sykes v. State of Cal. (Dep't of Motor Vehicles),* 497 F.2d 197, 202 (9th Cir.1974).

Here, DeGrassi alleges that Cook had threatened to file lawsuits against her on other, unrelated occasions. She also claims that the City defendants knew of the lawsuit before she did. She concludes that Cook's threats "became a reality" upon the filing of the Andrews action. These conclusory allegations do not set forth facts supporting a claim that the Andrewses acted under color of law. And because she alleges no facts indicating that the City defendants had any involvement in the *Andrewses' decision* to file that action, her allegations do not support a claim that the filing of the action is attributable to the City defendants. *See Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) ("[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.").

### 4. Claim against Burke, Williams & Sorenson, law firm for the City.

▮ The principal claim against the firm seems to be that during a December 1997 Council meeting, it instructed the Council to ignore DeGrassi's questions. DeGrassi's argument that this was a First Amendment violation is frivolous, since the First Amendment does not guarantee that citizens' speech will be heard. *See Smith v. Arkansas State Highway Employees, Local 1315,* 441 U.S. 463, 464–65, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979); *Pell v. Procunier,* 417 U.S. 817, 821–22, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).

### C. *Dismissal of Third Claim: Conspiracy to Violate DeGrassi's Civil Rights*

DeGrassi also alleges a third claim for conspiracy to deprive her of her civil rights, based on the same facts as the

second claim. Because we conclude that defendants' actions did not violate DeGrassi's civil rights, the district court properly dismissed her claim for conspiracy to violate her civil rights.

## CONCLUSION

Because under the California Tort Claims Act DeGrassi had no right to an unconditional defense of the Andrews litigation, the City offered DeGrassi everything to which she was entitled, and summary judgment was properly granted on the indemnity claim. As for the § 1983 claims, the statute of limitations barred those claims to the extent they involved acts occurring prior to September 23, 1996. Because the remaining allegations of First Amendment violations establish beyond doubt that DeGrassi could prove no facts entitling her to relief under § 1983, those claims were properly dismissed.

AFFIRMED.