**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JASON EUGENE DEOCAMPO; JESUS SEBASTIAN GRANT; JAQUEZS TYREE BERRY,

*Plaintiffs-Appellees*,

v.

JASON POTTS, individually, and in his capacity as a Vallejo Police Officer; ERIC JENSEN, individually, and in his capacity as a Vallejo Police Officer,

*Defendants-Appellants*,

and

JEREMY PATZER, individually, and in his capacity as a Vallejo Police Officer,

*Defendant.*

No. 14-16192

D.C. No. 2:06-cv-01283-WBS-CMK

OPINION

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, Senior District Judge, Presiding

Argued and Submitted May 10, 2016
San Francisco, California

Filed September 8, 2016

Before: John T. Noonan, Kim McLane Wardlaw,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Wardlaw

## SUMMARY[*]

### Civil Rights/Bankruptcy

The panel affirmed the district court's denial of a Rule 60 motion for relief from judgment, and agreed with the district court that neither a judgment against individual City of Vallejo police officers for excessive force nor a subsequent attorney's fee award in favor of plaintiffs was discharged by the City of Vallejo's bankruptcy proceedings.

Plaintiffs filed this action against Vallejo police officers and others asserting excessive-force and other constitutional claims under 42 U.S.C. § 1983 and state law. Subsequently, Vallejo filed for Chapter 9 bankruptcy and the district court stayed the § 1983 action. After Vallejo's plan for adjustment of debts was confirmed by the bankruptcy court, the district court lifted the stay in the § 1983 action, and a jury returned a verdict, finding that the officers used excessive force and awarding plaintiffs $50,000 in compensatory damages and attorney's fees under § 1988. The officers moved for relief from judgment, asserting that the judgment and fee award

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

were effectively claims against the City of Vallejo that were subject to adjustment under the bankruptcy adjustment plan.

The panel noted that under California law, Vallejo was generally obligated to indemnify its employees for claims against them arising from their employment. The panel held that California's indemnification statutes did not render a judgment or concomitant fee award against an indemnifiable municipal employee a liability of the municipal employer for purposes of adjusting or discharging the debts of a Chapter 9 debtor. The panel further held that the bankruptcy court's plan confirmation did not release any debtor but the City of Vallejo and did not expressly encompass claims or judgments against the City's employees. Accordingly, the panel held that the judgment in the § 1983 action was the officers' personal liability, not Vallejo's. The panel emphasized, however, that its conclusion that the judgment was against the officers personally, and not Vallejo, did not relieve Vallejo of its obligation to indemnify the officers under California law.

---

## COUNSEL

Austin Byrne Conley (argued), Gibbons and Conley, Walnut Creek, California; Noah G. Blechman and James V. Fitzgerald, III, McNamara, Dodge, Ney, Beatty, Slattery, Pfalzer, Borges & Brothers LLP, Walnut Creek, California; Claudia M. Quintana, Deputy City Attorney, City of Vallejo, Vallejo, California; for Defendants-Appellants.

Ayana Cuevas Curry (argued) and John L. Burris, Law Offices of John L. Burris, Oakland, California, for Plaintiffs-Appellees.

Krista MacNevin Jee, James R. Touchstone, and Martin J. Mayer, Law Offices of Jones & Mayer, Fullerton, California, for Amici Curiae California State Sheriffs' Association, California State Police Chiefs' Association, and California Peace Officers' Association.

**OPINION**

WARDLAW, Circuit Judge:

Does a municipality's bankruptcy plan of adjustment automatically discharge a judgment against individual officers for excessive force by operation of a California statute generally requiring public entities to defend and indemnify their employees for actions within the scope of their employment?

Like many a city in the wake of the 2007–08 financial crisis, the city of Vallejo, California found itself burdened by mounting debts as its tax base shrank. In 2008, Vallejo responded by petitioning for Chapter 9 bankruptcy, a form of relief available only to municipalities. Some two years after the bankruptcy court confirmed Vallejo's debt-adjustment plan, a federal jury found that two police officers employed by Vallejo used constitutionally excessive force when they arrested Jason Eugene Deocampo. In accordance with the verdict, the district court entered a judgment for money damages against the officers in their personal capacities, and awarded Deocampo his attorney's fees.

Under California law, Vallejo is generally obligated to indemnify its employees for claims against them arising from their employment. We hold that where, as here, the plan

confirmed by the bankruptcy court did not expressly encompass claims or judgments against the city's employees, the indemnification statutes do not subject such claims or judgments to adjustment by operation of law nor by the fact of the public employment itself. We affirm the district court's denial of the officers' Rule 60 motion for relief from judgment, and agree with the district court that neither the judgment nor attorney's fee award was discharged by Vallejo's bankruptcy proceedings.

## I.

### A. *Vallejo police use excessive force against Deocampo.*

On March 28, 2003, at approximately 8:00 p.m., Deocampo, Jesus Sebastian Grant, and Jaquezs Tyree Berry (collectively, "Plaintiffs") suffered a violent encounter with police officers employed by Vallejo. According to Plaintiffs, this encounter began when Officers Jason Potts and Jeremy Patzer stopped Berry on the street. With no justification, they kicked and slammed him to the ground, causing him to hit his head on a wooden fence. Deocampo and Grant approached the officers, asked why they were attacking Berry, and informed them that their actions were wrong. Officer Potts told them to go away, and Deocampo complied by walking away from him. Officer Potts followed Deocampo, and shoved him. Officer Potts and a third officer, Eric Jensen ("the Officers") beat Deocampo with their batons, and refused to stop even when he raised his hands in the air and said he would leave. The Officers also pepper-sprayed and

beat Grant. Plaintiffs were falsely arrested and charged with resisting, delaying, and obstructing the police.[1]

On March 30, 2006, Plaintiffs filed this action against Vallejo, Vallejo's chief of police, the Officers, and Patzer. Plaintiffs asserted excessive-force and other constitutional claims against the Officers and Patzer under 42 U.S.C. § 1983; *Monell* claims against Vallejo and its chief of police, *see Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978); and various state-law causes of action. On July 24, 2007, the parties stipulated to the dismissal with prejudice of Plaintiffs' *Monell* claims and of Vallejo and its chief of police as defendants.

*B.  Vallejo petitions for bankruptcy.*

Subsequently, on May 23, 2008, Vallejo filed for Chapter 9 bankruptcy. This was, at the time, one of the largest municipal bankruptcies in history, and California's largest since Orange County filed for bankruptcy in 1994. *See* Alison Vekshin & Michael B. Marois, *Bankrupt Vallejo, California, Approves Restructuring*, Bloomberg (Dec. 1, 2010).[2]

According to the City of Vallejo, a number of converging forces rendered the city insolvent and necessitated its

---

[1] The criminal charges against Plaintiffs were ultimately dismissed. California's two-year statute of limitations for personal injury actions was tolled while the criminal charges against Plaintiffs were pending. *See* Cal. Civ. Proc. Code § 335.1; Cal. Gov't Code § 945.3.

[2] *Available at* http://www.bloomberg.com/news/articles/2010-12-01/ vallejo-approves-plan-to-exit-california-s-biggest-bankruptcy-since-1994.

bankruptcy filing. Vallejo derived most of its revenues from property taxes, sales taxes, assessments, and fees. *See In re City of Vallejo*, No. 08-26813-A-9, 2008 WL 4180008, at *2 (Bankr. E.D. Cal. Sept. 5, 2008), *aff'd*, 408 B.R. 280 (B.A.P. 9th Cir. 2009). "Recent adverse economic conditions" caused Vallejo's revenues to decrease. *Id.* These conditions included not only those predictably associated with the financial crisis, but such contingencies as the closure of a Wal-Mart that had been a large source of sales tax revenue; the loss of shared revenue from a Six Flags/Marine World after Vallejo's ownership interest in the amusement park was bought out; and the unexpected retirement of several police officers and firefighters, who became entitled to millions of dollars in unbudgeted retiree payouts. *Id.* at *2, *5.

Vallejo implemented austerity measures, including cutting funds to its senior center, library, parks, symphony, and convention and visitors bureau; using vehicles and equipment well beyond their expected lives; and reducing employee rolls by 87 full-time positions. *Id.* at *3. Nevertheless, Vallejo's "ability to provide minimal levels of service to its residents and provide for their basic health and safety" was seriously threatened. *Id.* at *5. Pension obligations and benefits due under collective bargaining agreements with several unions could not easily be adjusted. *Id.* at *3. California laws made it difficult for Vallejo to raise taxes or borrow funds. As the Bankruptcy Appellate Panel noted, "Proposition 13 capped property tax rates to 1% of full cash value. Proposition 218 limited Vallejo's ability to raise any other taxes without a majority vote. Article XVI, section 18 of the California Constitution also restricted its ability to borrow funds." *In re City of Vallejo*, 408 B.R. at 286 & n.7. Over the objections of several creditors, the Bankruptcy Court for the Eastern District of California found Vallejo

eligible to file a Chapter 9 petition, and the Bankruptcy Appellate Panel affirmed. *Id.* at 299.

Vallejo was not alone among cities severely affected by the 2007–08 financial crisis. 2008 and the years since have witnessed a small but impactful resurgence in municipal bankruptcy filings. While most have been commenced by special-purpose districts, such as hospital, utility, or sanitation authorities, several cities have filed for Chapter 9 protection, including San Bernardino, California; Stockton, California; Hillview, Kentucky; and Detroit, Michigan. *See Bankrupt Cities, Municipalities List and Map*, Governing (last updated Aug. 21, 2015).[3]

Scholars have criticized the very concept of municipal bankruptcy as it is codified by Chapter 9 for a variety of reasons, including that it harms creditors and makes future lending unattractive, and that it hamstrings more flexible state-law solutions. *See* Omer Kimhi, *Chapter 9 of the Bankruptcy Code: A Solution in Search of a Problem*, 27 Yale J. Reg. 351, 384–85 (2010) (advancing the former argument); Michael W. McConnell & Randal C. Picker, *When Cities Go Broke: A Conceptual Introduction to Municipal Bankruptcy*, 60 U. Chi. L. Rev. 425, 494–95 (1993) (advancing the latter). Yet experts have warned that the surge in municipal bankruptcies that began during the financial crisis may not be over. *See, e.g.*, William C. Dudley, President & Chief Exec. Officer, Fed. Reserve Bank of N.Y., Opening Remarks for the Chapter 9 and Alternatives for Distressed Municipalities and

---

[3] *Available at* http://www.governing.com/gov-data/municipal-cities -counties-bankruptcies-and-defaults.html.

States Workshop (Apr. 14, 2015),[4] (opining that, while high-profile bankruptcy filings like Detroit's "have captured a considerable amount of attention . . . they may foreshadow more widespread problems than what might be implied by current bond ratings").

Our case law construing Chapter 9 is scant, and this appeal confronts us with a novel legal issue, of the kind that often surfaces when changing social and economic conditions awaken dormant statutes.  But Chapter 9 has awakened, and we do not presume further disputes over its interpretive and practical complexities will remain long at rest.

## C. Vallejo's bankruptcy filing results in a stay of Deocampo's lawsuit.

On May 30, 2008, one week after Vallejo's initial bankruptcy filing, Defendants filed a notice stating that this action was automatically stayed pursuant to 11 U.S.C. § 362. The district court—perhaps recognizing the oddity that Vallejo's bankruptcy could automatically stay an action in which Vallejo was no longer a party, and neither the plaintiffs nor the defendants were debtors—ordered the "non-bankrupt parties [to] show cause why this action should not be stayed in its entirety. . . ."  In response, the parties stipulated in writing that Vallejo's bankruptcy filing triggered an automatic stay "pursuant to 11 U.S.C. Section 362," though

---

[4] *Available at* https://www.newyorkfed.org/newsevents/speeches/2015/dud150414.html.  *Cf. also* Claire Shubik, Laura Horowitz & Thomas Ginsberg, *Tough Decisions and Limited Options: How Philadelphia and Other Cities are Balancing Budgets in a Time of Recession*, Pew 2 fig.1 (2009) (surveying 13 major cities and finding that 12 had annual deficits, 8 of which exceeded 10 percent of the city's general fund).

they did not elaborate as to why. On August 5, 2008, the district court entered the parties' jointly submitted stipulation and proposed order, and stayed the proceedings. The case would remain stayed for more than four years.

About a week after his case was stayed, Deocampo filed a proof of claim in Vallejo's pending bankruptcy proceedings. This stated that the amount of his claim was $300,000, and the basis for the claim was "Personal Injury."[5] The Officers did not file any proofs of claim in the bankruptcy proceeding, for anticipated indemnity, defense costs, or otherwise; nor did Vallejo's bankruptcy court filings list the Officers or any other employees as potential creditors on the basis of defense or indemnification obligations.

---

[5] Deocampo's proof of claim in the Vallejo proceedings was unnecessary and without legal effect, because his lawsuit was against the Officers in their personal—not official—capacities, and any judgment against them would be a determination of their liability, not Vallejo's. We do not fault Deocampo's counsel for filing the proof of claim, however, given the uncertainty in this area of law at that time, and we reject the Officers' arguments to the contrary. If Deocampo's counsel had not filed a proof of claim in Vallejo's bankruptcy proceedings on the ground that any judgment against the Officers was not Vallejo's debt, and had counsel's legal judgment not to do so been wrong, counsel would have risked forfeiting Deocampo's ability to collect on the judgment. *See* 11 U.S.C. §§ 524(a), 944; Fed. R. Bankr. P. 3003(c)(2) (in a Chapter 9 proceeding, "[a]ny creditor . . . whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed . . . any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution"). The choice to file a proof of claim, on the other hand, did not create any risk of harm—at worst, it would be a nullity. We therefore decline to infer from counsel's precautionary filing in this unsettled area of the law any concession or judicial admission that a judgment against the Officers would be a personal liability of Vallejo.

*D. Vallejo's plan of adjustment is confirmed by the bankruptcy court.*

Subsequently, Vallejo filed a Second Amended Plan for the Adjustment of Debts ("Plan") with the bankruptcy court. Vallejo anticipated that, under that Plan, litigation claimants would recover approximately 20 to 30 percent of the value of any claims below $500,000. On August 4, 2011, the bankruptcy court entered an order confirming the Plan, which became binding on all creditors on November 1, 2011.

*E. Deocampo's lawsuit against the officers is reinstated following Vallejo's bankruptcy plan confirmation.*

The district court lifted the stay on Plaintiffs' case on August 24, 2012. Following a 13-day trial, the jury returned a special verdict in favor of Deocampo. The jury found that the Officers had unreasonably seized Deocampo by using excessive force against him during the course of the arrest. It awarded Deocampo $50,000 in compensatory damages. On August 23, 2013, the district court entered judgment in accordance with the jury verdict.[6] The court subsequently awarded Deocampo costs and attorney's fees under 42 U.S.C. § 1988.

The Officers then moved for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). They contended the judgment and fee award (collectively, the "Judgment") were effectively claims against Vallejo that were subject to adjustment under the Plan. The district court

---

[6] Deocampo did not prevail on his other claims; Grant and Berry failed to prevail on any claim; and Officer Patzer was found not liable as to any claim.

denied the Rule 60(b) motion, reasoning that, because Deocampo sought and obtained relief against the Officers in only their personal, rather than official, capacities, the Judgment was not discharged by Vallejo's bankruptcy. The Officers timely appealed.[7]

## II.

We have jurisdiction under 28 U.S.C. § 1291. We review for an abuse of discretion the district court's decision to deny a Rule 60(b) motion, and review de novo any questions of law underlying the decision to deny the motion. *Lal v. California*, 610 F.3d 518, 523 (9th Cir. 2010).

## III.

*A. Chapter 9 bankruptcy.*

The Constitution empowers Congress to establish "uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl. 4. Congress first entered the field of municipal bankruptcy in the 1930s, when, confronted by the Great Depression, it enacted the precursor to Chapter 9. *See Puerto Rico v. Franklin Cal. Tax-Free Trust*, —U.S.—, 136 S. Ct. 1938, 1944 (2016). In the late 1970s, also a time of economic hardship for local

---

[7] The district court then awarded Deocampo supplemental attorney's fees for the time spent opposing the Rule 60(b) motion and litigating the original motion for fees. The Officers contend that this award, like the Judgment, is subject to adjustment under the Plan. However, because the Officers did not amend their prior notice of appeal or separately appeal the supplemental fee award, we lack jurisdiction to review it. *See Hunt v. City of Los Angeles*, 638 F.3d 703, 719 (9th Cir. 2011); Fed. R. App. P. 4(a)(1)(A).

governments, Congress enacted the most recent major overhaul to Chapter 9. *See generally* Kimhi, *supra*, at 366–69. The House Report observed that "the term 'bankruptcy' in its strict sense is really a misnomer for a [C]hapter 9 case." H.R. Rep. No. 95-595, at 263 (1977). Thus, although the "general policy underlying" Chapter 9 is to give the municipal debtor "a breathing spell from debt collection efforts in order that it can work out a repayment plan with its creditors," the municipal debtor,[8] unlike others, "cannot liquidate its assets to satisfy its creditors totally and finally." *Id.* Further, "there are no involuntary [C]hapter 9 cases," *id.* at 394, and Chapter 9 proceedings may be commenced only by a municipality that "desires to effect a plan to adjust [its] debts" and files a voluntary petition to do so, with authorization from the state. 11 U.S.C. §§ 109(c)(4), 301, 921.[9] It is not necessary that all or even a majority of creditors consent to a municipal plan of adjustment. 11 U.S.C. § 109(c)(5). For a plan to be confirmed, the bankruptcy court must find, *inter alia*, that "the plan is in the best interests of creditors and is feasible." 11 U.S.C. § 943(b)(7).

When a Chapter 9 debtor's plan has been confirmed by the bankruptcy court, and certain other procedural requirements have been fulfilled, *see* 11 U.S.C. § 943(b), the debtor is generally discharged from debts that have not been

---

[8] The Bankruptcy Code defines "municipality" to mean a "political subdivision or public agency or instrumentality of a State." 11 U.S.C. § 101(40).

[9] *See also* 11 U.S.C. § 904 (providing that, unless the municipal debtor consents or its plan so provides, the court cannot "interfere with" a municipal debtor's political or governmental powers, property or revenues, or use or enjoyment of income-producing property).

"excepted from discharge by the plan or order confirming the plan."[10]  11 U.S.C. § 944(b), (c)(1).  The discharge:

> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section . . . 944 . . . of this title, whether or not discharge of such debt is waived; [and]

> (2)  operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. §§ 524(a)(1)–(2), 901.

---

[10] Nor is the debtor discharged from debts owed to entities that had neither notice nor actual knowledge of the case before confirmation of the plan. 11 U.S.C. § 944(c)(2).  However, the exceptions to dischargeability set forth by 11 U.S.C. § 523(a), including the exception that renders non-dischargeable debt arising from "willful and malicious injury," *id.* § 523(a)(6), do not apply in a Chapter 9 bankruptcy. *See V.W. ex rel. Barber v. City of Vallejo*, No. CIV. S-12-1629, 2013 WL 3992403, at *2–3 (E.D. Cal. Aug. 2, 2013) (opining that this is a "somewhat surprising, indeed, alarming result").

## B. *The Plan did not adjust or discharge the Judgment against the Officers.*

### 1. California's statutory indemnification framework.

The Officers do not contend that Vallejo's bankruptcy discharge wiped out the Judgment against them entirely. Rather, it is their position that the claim for which Deocampo filed proof in Vallejo's bankruptcy proceedings was subject to the Plan's adjustment schedule, reducing the claim's value to 20 to 30 percent of the Judgment. The Officers contend that, to the extent the Judgment purports to create an obligation distinct from that adjusted claim, the confirmation of the Plan discharged and rendered this obligation void. *See* 11 U.S.C. §§ 524(a)(1)–(2), 944(b)–(c).

Of course, it was Vallejo, not the Officers, that declared bankruptcy and adjusted its debts, and the Judgment was entered against the Officers solely in their personal capacities. The Officers argue, however, that the Judgment was brought within the ambit of the Plan by the California Government Code, which broadly requires public entities like Vallejo to indemnify their employees in litigation arising from the employees' performance of official duties. The Officers rely principally upon Section 825 of the Government Code, which in relevant part provides:

> [I]f an employee or former employee of a public entity requests the public entity to defend him or her against any claim or action against him or her for an injury arising out of an act or omission occurring within the scope of his or her employment as an employee of the public entity and the request is made in

writing not less than 10 days before the day of trial, and the employee or former employee reasonably cooperates in good faith in the defense of the claim or action, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed.

Cal. Gov't Code § 825(a).[11]

Section 825 requires the public entity to indemnify its employee for compensatory damages awarded under 42 U.S.C. § 1983 and attorney's fees the employee is ordered to pay under 42 U.S.C. § 1988. *See Williams v. Horvath*, 548 P.2d 1125, 1132–34 (Cal. 1976) (en banc). Other California Government Code provisions require the public entity to provide for its employee's defense against an indemnifiable action upon the employee's request, and authorize the employee to compel his or her employer to make any required defense or indemnification payments, or to reimburse the employee for any such payments the employee has already made. *See* Cal. Gov't Code §§ 825.2, 970.2, 995, 996.4. Indeed, less than three weeks before the trial, the Vallejo City Attorney wrote to the Officers, stating that the City had undertaken their defense and would indemnify them for any damages.

---

[11] California Government Code Section 825(b) sets forth additional requirements for the indemnification of punitive or exemplary damages awarded against a public employee. These requirements do not apply in this case because the jury awarded only compensatory damages.

The Officers advance two related arguments why Vallejo's statutory indemnification obligations subjected the Judgment to adjustment under the Plan. First, they argue that, by operation of law, the Judgment is Vallejo's liability rather than their own. Second, the Officers argue that, even if the Judgment is deemed one against them personally rather than Vallejo, there is "such identity" between Vallejo and themselves that adjustment of the Judgment "fall[s] within the language or intent of the Plan." We address these arguments in turn.

    2. The Judgment against the Officers was not a personal liability of Vallejo.

The Officers argue that the California indemnification provisions rendered the Judgment a personal liability of Vallejo. We disagree.

It is a basic precept of Section 1983 litigation that a judgment against a government official in his personal capacity leads to the imposition of liability "against the individual defendant, rather than against the entity that employs him." *Kentucky v. Graham*, 473 U.S. 159, 167–68 (1985). Thus, "an award of damages against an official in his personal capacity can be executed only against the official's personal assets." *Id.* at 166.

We have held that, for purposes of the Eleventh Amendment, the indemnification obligation imposed by California Government Code Section 825 does not render a personal-capacity suit against a state employee one against the state, and so sovereign immunity does not extend to the employee. *Demery v. Kupperman*, 735 F.2d 1139, 1147 (9th Cir. 1984); *see also Ashker v. Cal. Dep't of Corr.*, 112 F.3d

392, 395 (9th Cir. 1997); *cf. Ronwin v. Shapiro*, 657 F.2d 1071, 1074–75 (9th Cir. 1981). Rather, the statute creates a "purely intramural arrangement between a state and its officers," because if a plaintiff "prevails on the merits, the court will not be ordering the state to do anything; it will only be ordering the *official* to pay damages. If the state official desires indemnification under the state statute, he must bring suit in a state court." *Demery*, 735 F.2d at 1147–48.

We find the *Demery* line of cases persuasive with respect to the matter at hand. It is true that these cases addressed disputes over the scope of sovereign immunity rather than bankruptcy discharge. However, the Officers' contention that the reach of these cases must be cabined to sovereign immunity is belied by the thoughtful and generally applicable approach with which these cases analyze the attribution of liability between public entities and their officers. This approach is equally applicable here. The Judgment embodies the jury's determination, by a preponderance of the evidence, that the Officers, acting in their personal capacities, seriously injured Deocampo while acting under the color of state law, as well as a concomitant Section 1988 fee award that Congress has seen fit to authorize for injuries of this nature. Deocampo is entitled to enforce the Judgment against the Officers personally, but he has no right to enforce it directly against Vallejo or its property. *Graham*, 473 U.S. at 166. Vallejo may be obligated by statute to indemnify the Officers for the amount of the Judgment, but this "purely intramural arrangement" does not alter the fact that the Judgment itself is binding on the Officers and the Officers alone. *Demery*, 735 F.3d at 1147–48.

Therefore, we hold that California's indemnification statutes do not render a judgment or concomitant fee award

against an indemnifiable municipal employee a liability of the municipal employer for purposes of adjusting or discharging the debts of a Chapter 9 debtor. The Judgment is the Officers' personal liability, not Vallejo's.

3. The Plan does not effect a third-party adjustment or discharge of the Officers' judgment debts.

Alternatively, the Officers argue that, even if the Judgment is not Vallejo's debt by operation of law, the indemnity statutes create such identity between Vallejo's interests and their own that the Judgment is actually against the debtor and is thus subject to the Plan.

Other Circuits have held that a debtor's Chapter 11 bankruptcy plan may operate to discharge the debts of certain non-debtor third parties, provided the bankruptcy court has "accepted and confirmed [this discharge] as an integral part of reorganization." *In re A.H. Robins Co.*, 880 F.2d 694, 702 (4th Cir. 1989) (quoting *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir. 1987)). We have rejected this construction of the Bankruptcy Code. While the bankruptcy court has broad powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," 11 U.S.C. § 105(a), it cannot confirm a plan that does not comply with applicable Code provisions. 11 U.S.C. § 1129(a)(1). In general, 11 U.S.C. § 524(e) provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." Thus, we have "repeatedly held, without exception," that, in a Chapter 11 proceeding, "§ 524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors." *In re Lowenschuss*, 67 F.3d 1394, 1401 (9th Cir. 1995) (citations omitted).

However, as the Officers point out, Chapter 9, unlike Chapter 11, does not incorporate Section 524(e).  11 U.S.C. § 901.  As such, the rationale relied upon by *Lowenschuss* does not apply in Chapter 9 proceedings.  We have not previously addressed the question of whether, in a proceeding to which Section 524(e) does not apply, Section 105 authorizes a bankruptcy court to confirm a plan that effects the adjustment or discharge of the debts of non-debtor third parties.  We need not, and do not, answer this question here.  Because the Plan does not, by its terms, purport to effect the third-party discharge advocated by the Officers, we do not opine on the power of the bankruptcy court to confirm a hypothetical plan that does so.

The Plan makes no express reference to indemnification or the discharge of claims against Vallejo employees.  In asserting that the Plan nevertheless contemplated the discharge of such claims, the Officers rely upon open-ended, boilerplate language.  The Plan provides that, following its effective date, all "Claims" are fully discharged, "whether against the City or any of its properties, assets or interests in property."  The Plan defines "Claim" to mean "a claim against the City or the property of the City within the meaning of section 101(5) of the Bankruptcy Code."[12]  The

---

[12] Section 101(5) provides:

The term "claim" means—

(A)  right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

Officers argue that, broadly construed, this language encompasses the Judgment, and a broad construction is necessary to further the Bankruptcy Code's policy of providing debtors with a fresh start.

The Officers confuse the breadth of the Bankruptcy Code's definition of "claim" with the breadth of the discharge or adjustment effected by a particular plan, including one that recites the statutory definition.[13] An ambiguity in a bankruptcy plan drafted by a debtor is construed against the debtor. *In re Brawders*, 503 F.3d 856, 867 (9th Cir. 2007); *Miller v. United States*, 363 F.3d 999, 1005–06 (9th Cir. 2004). Relatedly, "any ambiguity may also reflect that the court that originally confirmed the plan did not make any final determination of the matter at issue." *In re Brawders*, 503 F.3d at 867. The Circuits that have permitted Chapter 11

---

> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

[13] The Officers rely upon several cases in which courts ruled that an indemnity obligation triggers the automatic stay provisions of 11 U.S.C. §§ 362(a) & 922. However, the discharge provisions are narrower than the automatic stay provisions, the broad reach of which furthers their purpose to freeze the status quo at the time a petition is filed, ensure that all claims against the debtor will be brought in a single forum, and protect creditors by providing for the orderly administration of claims. *See Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993). Among other differences, the stay provisions "do[] not contain such limiting concepts as 'personal liability of the debtor.'" *In re Munoz*, 287 B.R. 546, 554 n.8 (B.A.P. 9th Cir. 2002) (quoting 11 U.S.C. § 524(a)(2)). The district court correctly determined that the automatic stay cases do not control the outcome of the Officers' Rule 60(b) motion.

plans to release non-debtors have required that the release be express, *see In re Applewood Chair Co.*, 203 F.3d 914, 919 (5th Cir. 2000) (per curiam), and that it be supported by "specific factual findings," *see Behrmann v. Nat'l Heritage Found.*, 663 F.3d 704, 712–13 (4th Cir. 2011). While we reserve judgment on the validity of an express third-party release in a Chapter 9 proceeding within our jurisdiction, we observe that at least two large municipalities that have filed for bankruptcy, Detroit and San Bernardino, have included in their proposed plans the express discharge of claims against indemnifiable employees. *See In re City of Detroit*, 524 B.R. 147, 265 (Bankr. E.D. Mich. 2014);[14] Third Am. Plan for the Adjustment of Debts of the City of San Bernardino, Cal., at 55–59, *In re City of San Bernardino* (Bankr. C.D. Cal. filed July 29, 2016) (No. 6:12-bk-28006-MJ), Dkt. 1880.[15] Thus, when Vallejo filed the Plan, it was not beyond fathom that it should propose a putative third-party release. Vallejo simply failed to include such a proposal.

---

[14] Detroit's proposal of this third-party discharge did not result in its automatic confirmation, underscoring the critical role bankruptcy courts play in adjudicating whether a plan shall be confirmed. *See In re City of Detroit*, 524 B.R. at 265–67 (sustaining Section 1983 judgment creditors' objection to a Chapter 9 plan that expressly released indemnified officers because "[t]he record is devoid of any evidence suggesting that the additional protection of a third-party release for these officers is necessary to the City's efficient and effective functioning, to its revitalization, or to the success of its plan").

[15] *Available at* http://www.sbcity.org/home_nav/chapter_9_bankruptcy/default.asp. *But cf.* Katy Stech, *San Bernardino Bankruptcy Plan Would Shield Police from Claims*, Wall St. J. (Apr. 18, 2016), http://www.wsj.com/articles/san-bernardino-bankruptcy-plan-would-shield-police-from-claims-1461017965 (describing objection to this feature of San Bernardino's previous proposed plan filed by plaintiffs in police excessive-force lawsuits).

The Plan does not expressly release any debtor but Vallejo. The bankruptcy court's Plan confirmation order, and the minute order it incorporates, make no reference to indemnity or third-party discharge. These orders cannot reasonably be construed to set forth a judicial finding that third-party discharge or adjustment was an "integral part of reorganization." *In re A.H. Robins Co.*, 880 F.2d at 702 (citation omitted). For these reasons, the Judgment remains undischarged, unadjusted, and untouched by Vallejo's bankruptcy.

> 4. The consequences of affirming the denial of Rule 60(b) relief.

On appeal, the Officers and various law enforcement association amici make a third, policy-oriented argument that denying the Officers relief from judgment would have dire consequences. They are concerned that a ruling in favor of Deocampo will inject uncertainty into the scope of indemnity coverage, demoralize officers, and dissuade them from zealously performing their duties, or deter them from even becoming police officers. These concerns are misplaced. The Officers will not be required to pay the Judgment out of their own pockets. Our conclusion that the Judgment is against the Officers personally, and not Vallejo, does not relieve Vallejo of its obligation to indemnify the Officers under California law. Although the Officers did not file proofs of claim in the bankruptcy proceedings, and Vallejo did not list them as creditors, it was not necessary for them to have done so to preserve their right to statutory indemnification.

Critically, under California law, the event giving rise to the Officers' claim for indemnification is Vallejo's provision

of a defense for the Officers, not the alleged injury inflicted by the Officers or the plaintiffs' filing of a lawsuit. *See Rivas v. City of Kerman*, 13 Cal. Rptr. 2d 147, 150 (Ct. App. 1992), *as modified* (Nov. 23, 1992) (construing Cal. Gov't Code § 825). Here, Vallejo undertook the Officers' defense on July 18, 2013, after the confirmation of the Plan.[16] Because this triggering event occurred after the discharge, Vallejo's indemnification obligation is a post-petition debt that is not subject to adjustment, discharge, or the bankruptcy injunction. *See O'Loghlin v. Cty. of Orange*, 229 F.3d 871, 874 (9th Cir. 2000). The Plan also committed Vallejo to "continue to operate pursuant to the City Charter, the Constitution of the State of California and other applicable laws," and thereby excepted from discharge any § 825 claims. *See* 11 U.S.C. § 944(c)(1). Our decision thus does not unsettle the commitment of California municipalities to indemnify their employees, nor should it chill legitimate law enforcement activity.

All of the practical consequences of our decision fall upon Vallejo rather than the Officers. The Officers acknowledge as much in their briefing, which is replete with concerns about "the complete subversion of the goals of bankruptcy reorganization," and unsecured judgment creditors cutting ahead of others more senior in priority in a plan of adjustment. While we do not speculate why the Officers are

---

[16] In the July 18, 2013 letter, the Vallejo City Attorney wrote to the Officers, "The City of Vallejo has undertaken your defense and will represent your interests in this lawsuit. In addition, should any damages award be rendered against you, the City of Vallejo will indemnify you for such damages. The City of Vallejo believes that you were acting in the course and scope of your employment during the incident, and accordingly would pay for the damages which stem from your actions during the arrest."

so solicitous of these matters despite lacking any skin in the bankruptcy game, we note that, though Vallejo has not been a party to this action since 2007, Vallejo furnished the Officers' defense, and Vallejo's City Attorney, among others, continues to represent them on appeal. Like the misplaced concern with the demoralization of law enforcement, these additional, structural concerns lack force. We need not weigh policy considerations here to glean the plain meaning of the bankruptcy and state statutes dictating the outcome of this appeal. We note, however, that, were it appropriate to consider policy, the policies of satisfying the goals of bankruptcy and ensuring that our law enforcement officers can effectively perform their jobs are not the sole policies in play. Deocampo's position is supported by the significant public policies of (1) holding accountable state actors who misuse their positions of power to violate the constitutional and human rights of their fellow citizens; and (2) fully redressing the harms they have caused to their victims.

## IV.

Even if Chapter 9 clears a path for some municipal debtor to discharge or adjust the judgment debts of its indemnified employees in bankruptcy, Vallejo is not that debtor, and the Plan is not that path. The Officers are not entitled to relief from judgment, and the district court properly denied their Rule 60(b) motion.

**AFFIRMED.**